Des Moines Wet Wash Laundry, Appellee, v. City of Des Moines, Appellant.

**EMINENT DOMAIN:** Compensation—Leasehold for Special Purpose. The measure of damages for condemning a leasehold interest in real estate is the value of the unexpired term, less the rental reserved; but, in determining this ultimate question, when the leased premises have been equipped by the tenant for a *particular* business, a variety of elements of loss, expense, and inconvenience may be considered by the jury, not as substantive elements of damages, but as *descriptive of the injury inflicted by the condemnation,* i. e.: (1) location; (2) surroundings; (3) accessibility; (4) construction of buildings and depreciation thereof; (5) character, condition, and manner of installation of machinery; and (6) the reasonable cost of removing and reinstalling said machinery in a new location.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

MAY 6, 1924.

PROCEEDING in eminent domain. From the award of the sheriff's jury, an appeal was taken to the district court, and upon trial to a jury, a verdict of $1,500 was returned. From the judgment entered thereon, the city of Des Moines appeals to this court.—*Affirmed.*

*John J. Halloran, Reson S. Jones, Chauncey A. Weaver,* and *Paul Hewitt,* for appellant.

*Nourse & Nourse,* for appellee.

De Graff, J.—This is a proceeding in eminent domain. In August, 1919, the city of Des Moines, as part of a purpose in carrying out a project known as Keosauqua Way, condemned certain land on which was situated a building used and occupied under a lease by plaintiff, for a laundry. It appears that, in 1916, plaintiff entered into a written contract of lease with the owner of the fee, whereby the latter agreed to build and lease, and did build and lease, a brick structure 30x60 feet, a store room and garage combined, 30x20 feet, and a smaller garage, 10x20 feet. The buildings so constructed and leased were used by appellee from their completion to the time of condemnation by the defendant city. The lease was for seven years, at $45 per month, and at the time of the surrender of the premises to the city, the term had three and one-half years to run. The condemnation and removal of the leased premises by the city terminated plaintiff's business and destroyed its plumbing and steam connections, installed and equipped at its own expense, and compelled it to tear up and remove its machinery and appliances to another location. The evidence shows that the leased premises had a rental value, at the time of the condemnation, of $80 to $85 per month, and would have been worth more during the remainder of the lease. The jury by its verdict determined the value of plaintiff's leasehold interest for the remainder of the term to be $1,500, and allowed that sum, with interest at 6 per cent, from the time of the taking of the premises, August 20, 1919.

The propositions advanced by the appellant city on this appeal primarily have to do with the instructions given by the court to the jury. The instructions *per se* disclose the character of the overruled objections made to the introduction of the evidence upon which the instructions are predicated. The trial court gave a clear and comprehensive charge, calling the attention of the jury to the facts and circumstances presented by the evidence, and this opinion necessarily addresses itself to these matters.

The defendant city had the right to take the property in controversy for public use, and there was a compliance with the statute in the exercise of the right of eminent domain. We have, therefore, a well defined issue, finding its origin in the instructions bearing on the elements or items of value which the jury were privileged to take into consideration in determining the damages to be awarded. The jury was told that the plaintiff was entitled to recover, on account of the taking of plaintiff's leasehold for street and highway purposes, "the difference in the fair and reasonable market value of the leasehold on August 20, 1919, before the same was taken by the defendant, and the fair and reasonable market value of the same immediately after the same had been condemned and taken by the defendant," without any reference to the enhanced value or benefits, if any, by reason of the improvement. The jury was then instructed:

"No. 6. As bearing upon the question of the fair and reasonable market value of plaintiff's leasehold, as heretofore defined, not as distinct and independent items of damages, but as elements bearing upon and as tending to show the reasonable market value thereof, as defined in the preceding instruction, you may consider all the varied elements of value, as disclosed by the evidence in the case, in regard to the location of said premises; the surroundings thereof; its accessibility; nearness to the business center, the use to which the same has been put; the purpose for which the buildings and improvements located thereon are used; the general construction of such buildings; the depreciation to such buildings, if any, since they were constructed, by reason of their use for the purposes for which they were constructed and used; the manner of using the same in connection with the business plaintiff was conducting with the equipment in said building. As a further element bearing upon and as tending to show the fair and reasonable market value of said leasehold, as heretofore instructed, you may consider the general character of the machinery, as installed on said leased premises; its condition; the date when the same was installed; the manner of installation; and the fair and reasonable cost of installing the same machinery in the new location to which it became necessary to remove the same by reason of the condemnation of said leasehold interest, as you may find from

a preponderance of the evidence. As a further element bearing upon and as tending to show the fair and reasonable market value of plaintiff's leasehold, you may consider the fair and reasonable cost of removing the machinery and equipment from said leased premises, and the fair and reasonable cost of cartage or transportation for a reasonable distance, which you may find was necessary. And if you find from a preponderance of the evidence that the place where said machinery so installed in the new location was a reasonable distance, such as might reasonably be necessary for the proper preservation and protection of said machinery, then such cartage and transportation to the place where the same was installed may be included in the damages which plaintiff has sustained in your determination of the reasonable value of the leasehold, as heretofore instructed, as well as all the other facts and circumstances in evidence which tend to establish the value of said leasehold at the time it was taken.''

A tenant for years is the owner of an estate, and is entitled to compensation for an injury done in taking his property for public uses. In general terms, the proper measure of damage is the depreciation in the market value of the property caused by the condemnation in the location and construction of the highway. Two questions arise: What was the value of the property,—that is, the value of the tenant's leasehold,—unaffected by the injury? Second, what was its value at the time of surrender, as affected by the injury? The difference is the true measure of the compensation. In strict terms, the tenant's recovery is restricted to the value of the unexpired term. It is the value of the unexpired term of the lease, less the rental reserved. In the ascertainment of this value, what circumstances or elements are proper to take into consideration? It is impossible to specify all of the elements that enter into such a problem. In fact, all of them cannot be anticipated, and many of them are developed in the course of the litigation consequent upon the exercise of the right of eminent domain. They will vary with the character of the property affected and the uses to which the property is applied. In the instant case, the estate of the plaintiff was limited to a particular use. The laundry business was the only business within the contemplation of the

lease.. If he was caused to abandon his leasehold, it became worthless. Its enjoyment required that the appliances which had been specially constructed for a particular use in the building remain in operation. They were, in fact, as to *locus in quo*, rendered useless. There was no duty on the part of the city to provide similar facilities to the lessee, but damages were insured to him. Therefore, the various matters referred to in the court's instruction were properly received in evidence "as descriptive of the injury inflicted, * * * and they were for the consideration of the jury, not as specific items of claim, but as affecting market value." *Schuylkill River E. S. R. Co. v. Kersey* (Pa.), 19 Atl. 553. The instant circumstances are somewhat novel, but not unusual. The matters mentioned by the court were elements which evidently and properly entered into the consideration and determination of the value of the lease. The defendant was bound to make just compensation to plaintiff, from whom the property was taken. There was no attempt—covert or otherwise —to recover profits in the business. This was an item that would be too remote and speculative, and the authorities quite universally so hold. *St. Louis, K. & N. W. R. Co. v. Knapp-Stout & Co.*, 160 Mo. 396 (61 S. W. 300) ; *Ranlet v. Concord R. Corpn.*, 62 N. H. 561 ; *Emery v. Boston Terminal Co.*, 178 Mass. 172 (59 N. E. 763) ; *McMillin Printing Co. v. Pittsburg, C. & W. R. Co.*, 216 Pa. 504 (65 Atl. 1091). Plaintiff sought to show what the lease was worth. Here we have a piece of property put to a useful purpose, and in determining the value thereof, before and after the injury, the machinery and fixtures which gave to the property its distinctive character as a laundry must be taken into account. The lease was involuntarily terminated, and many items that are not strictly items of damage become essential as a matter of evidence, in fixing the value of the leasehold. In most cases of this character, just compensation, or even fairly adequate recompense, is difficult to determine. It is one thing to state the general rule of damage, concerning which there is no contention; but it is quite another thing to agree fully on the items of evidence which a jury is entitled to consider in determining the value of a leasehold. The term "just compensation," as found in Constitution and statute, has no technical or purely legal significance. The words express in a general way

the meaning intended.   The real right of which plaintiff is deprived in the exercise of eminent domain by the defendant, and for which, under the Constitution of the state, he is entitled to be compensated, is the right to remain in undisturbed possession and enjoyment to the end of the term.

"The loss resulting from the deprivation of this right is what he is entitled to recover.   The value of the right he is forced to sell cannot ordinarily be measured by its market price, for there is no market for it; nor can it always be measured by the difference between the rent reserved and the rental value if the lease should be a favorable one.   If, as was the case here, a tenant engaged in a business requiring the use of heavy machinery and appliances should secure a new place equally well adapted to his business, and at the same rent, he would still be at the expense of removal, and at a loss because of the stoppage of his business.   These are matters to be considered in connection with others, not as substantive elements of damage, but as tending to prove the value of the leasehold interest."   The evidence in question is admitted to prove this value.   Profits or losses have no bearing on the question at issue, which is the value of the estate.   *McMillin Printing Co. v. Pittsburg, C. & W. R. Co.*, supra.

It would frequently happen that market value would be an unsatisfactory test of the value to a tenant of a leasehold interest. Standing alone, it is really no test at all, and oftentimes it would have no market value.   It might not be assignable at the will of the tenant.   Plaintiff's leasehold was commandeered, and the obligation was upon plaintiff to minimize the consequent damage. One way of doing this, and which was done, was to secure other quarters.   The value of the property taken, therefore, includes, not only the lease, but the machinery and fixtures used in connection therewith.   The removal of the machinery was a necessary consequence of the location of the highway, as the property, both as to the fee and the tenancy for years, was taken *in toto*. It argues nothing to say that the tenancy would have terminated at the end of three and one-half years, and a removal at that time would be necessary.   We cannot assume that the tenancy would have sooner terminated.   Nor are we dealing strictly with personal property, as the term is legally understood.   The ma-

chinery must be regarded as fixtures, and in order that the business could be carried on as it was when plaintiff's property was taken, these or similar machines and equipment were needed. The city did not want the machinery, could not use it, and, if taken by the city for just compensation, the city would have to sell or give it away. These appliances were essential to the existence of the laundry business, but in the condemnation, that business was destroyed. There was no obligation on the part of the city to remove the machinery, and in the instant case it did not propose to do so. The value of the machinery, therefore, as installed, was one of the elements to be considered in estimating the value of the leasehold interest. It is generally held, in condemnation proceedings, the property being taken *in invitum,* that the controlling principle is analogous to vendor and vendee, and not between landlord and tenant.

In *Pause v. City of Atlanta,* 98 Ga. 92 (26 S. E. 489), it is said:

"The increased value of the premises for rent in consequence of the putting in of such fixtures and improvements may properly be considered in computing the damages to the leasehold estate."

In *Shipley v. Pittsburg, C. & W. R. Co.,* 216 Pa. 512 (65 Atl. 1094), the doctrine is reaffirmed that the depreciation in value of the fixtures in place and the reasonable cost of removal should not be submitted to the jury as separate items for which a recovery could be had, but as evidence of the value of the right of undisturbed possession to the end of the term which had been taken from the plaintiff. In *Ehret v. Schuylkill River E. S. R. Co.,* 151 Pa. 158 (24 Atl. 1068), the facts disclose that, among other things, in consequence of the leased lot's having been taken by eminent domain, it was necessary for plaintiffs to convey the tar to the place where it was distilled, by a specially constructed boat, and that it was also necessary to erect temporary works for distilling the same. It was held on principle, as well as authority, that such evidence was proper to be considered by the jury as affecting the market value of the condemned leasehold. See, also, 2 Lewis on Eminent Domain, Sections 727 and 728.

The instant case is not in tort, although it sounds in damages, and is, in effect, a feigned issue, to determine just com-

pensation, to which plaintiff has a right by reason of the lawful taking of its property for public use. The question is, how to apply the rule for the estimation of damages occasioned by the condemnation of a leasehold interest. The decisions are not harmonious. Ordinarily, market value is the criterion, but in certain cases it is not the true standard by which to determine the value. It is difficult, if not impossible, to lay down a rule of universal application as to what may be considered as elements of damage, as the equities of the parties must more or less depend upon the particular facts and circumstances of each case. *Seattle & M. R. Co. v. Scheike,* 3 Wash. 625. This is particularly true as applied to a leasehold. Value must be determined by a consideration of the uses to which the property is adapted. All circumstances naturally affecting this value are open to consideration.

"Every legitimate use to which it may be applied may be considered. Rental and use may be shown as tending to prove value. Although the interest taken in this case is only a leasehold, and the whole is taken, the same rule applies, viz., the market value of the thing taken. * * * In awarding compensation to a lessee, * * * the market value of the unexpired term should be allowed, taking into consideration as elements of value the situation, condition, and use made, or that may be made, of the premises, and the nature and prosperity of the business carried on there, if it affects the value of the lease." *Bales v. Wichita Midland Valley R. Co.,* 92 Kan. 771 (141 Pac. 1009).

In *Pegler v. Inhabitants of Hyde Park,* 176 Mass. 101 (57 N. E. 327), evidence was permitted to be introduced to prove the value of plants, flowers, and potted soil in a greenhouse property that was condemned. This evidence was admitted for a single purpose, and was limited in the instructions to the jury. It is said:

"The jury were told that no damages could be allowed for the good will or for injury to the business or to the plants or flowers, and that this evidence was admitted only as bearing upon the question of the capacity of the real estate for use."

There is a distinction made between fixtures as such, and stocks of goods or personal property, as contradistinguished from fixtures. In *City of St. Louis v. St. Louis, I. M. & S. R. Co.,*

266 Mo. 694 (182 S. W. 750, L. R. A. 1916 D 713), this distinction is noted, and it is there held that, if fixtures pass to the condemner, they must be paid for; but if the owner elects to take the fixtures, a different rule must obtain. It is said:

"If appellant does not want these fixtures, and respondent elects, or has elected, to take them (or, as seems probable, has already taken them), then damages which appellant will be held to pay as such value of them should be recouped to the extent of their reasonable market value, as they stood in their old location, when confronted, however, as diminishing such value, by the necessity of immediately tearing them out and reinstalling them elsewhere."

The cost and expense of equipping a new location cannot be regarded as an item for which plaintiff is to be compensated in so many dollars and cents, and to allow the expense of equipping both the old and new locations would be a duplication in a matter of compensation. These are items of evidence, however, to be considered by the jury in determining the value of the leasehold taken.

All property is held subject to the implied condition that it must be surrendered whenever the public interest requires it, and the inconvenience and expense incident to the surrender of the possession are not elements of damage strictly, to which the owner is entitled. An established trade or business connected with a location clearly enhances the value of a leasehold interest, and just compensation contemplates this fact. In condemnation proceedings, the word "damage" embraces more than the mere physical taking of property, and is not restricted to cases where the owner is entitled to recover as for a tort at common law. *Reardon v. City and County of San Francisco*, 66 Cal. 492 (6 Pac. 317).

We conclude, therefore, that the evidential matters that were admitted over legal objections were competent, and that the instruction which permitted the jury to consider these matters, not as substantive elements of damage, but as descriptive of the injury inflicted, was correct. It is evident from the verdict returned that the jury understood and correctly interpreted the instruction, and treated the evidence, not as items of damage, but

as an essential guide in determining the value of the leasehold taken. Wherefore, the judgment entered is—*Affirmed.*

ARTHUR, C. J., STEVENS and VERMILION, JJ., concur.