JAMES AGRAS *vs.* STATE BOARD OF PUBLIC ROADS.

APRIL 17, 1936.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

BAKER, J.   This is a petition filed under the provisions of general laws 1923, chapter 97, as amended by public laws 1929, chapter 1306, to recover damages allegedly caused the petitioner by reason of the condemnation by the respondent of certain property in the town of Westerly for highway purposes.   A trial was had in the superior court before a jury which awarded the petitioner $1,200.   A motion for a new trial was thereupon filed by the petitioner on the ground that the verdict was against the evidence in that the damages assessed were inadequate.   This motion was denied by the trial justice, and the case is now before us on the petitioner's exception to this decision.

The testimony disclosed that the respondent condemned a certain building on Main street in Westerly in order to widen a highway.   The petitioner held a lease on a part of the ground floor of this building where he conducted a restaurant consisting of a dining room and connecting kitchen.   These premises had been occupied as a restaurant by different persons over a period of years.   The petitioner's first lease, bearing date of October 16, 1924, expired on

October 31, 1929. He then obtained a second lease terminating October 31, 1934, under which he was required to pay an annual rent of $1,800. There was no renewal clause in this lease. The date of the condemnation was January 28, 1932, and therefore at that time the lease involved herein had approximately thirty-three months to run. The sole question in issue was the value of this leasehold interest to the petitioner at the time the condemnation took place.

At the trial, he introduced evidence tending to prove that the value of certain permanent improvements he had made in the restaurant in 1924, when he first went into occupation seven years prior to the condemnation in question, was about $2,000. In general these improvements consisted of a new front, panelling on a portion of the side walls, a tile floor, piping, and electric fixtures. In addition, the petitioner was allowed to show that he had equipment, machines and trade fixtures of the approximate value of $2,100 in the restaurant at the time the condemnation was made; that if removed therefrom such articles would have a value of $380, and that to move them and set them up in a new location would cost about $1,000.

This line of evidence was admitted by the trial justice in order to assist the jury in arriving at the fair value of the petitioner's leasehold interest, and not as proof of individual items of damage to be passed upon specifically and separately and allowed or disallowed as the case might be. In his charge to the jury the trial justice adhered to this ruling, as the following excerpt will show: "Now you understand when this lease was terminated, why it was terminated so that the necessity for paying further rent on the part of Mr. Agras to the owner, ceased, but he had a value therein, according to the testimony, which was over and above the value as fixed by the terms of the lease, and that was caused by the improvements, apparently, presumably, from the testimony, which the petitioner had installed. He had installed a floor of a certain type, and put in panelling and he had done one thing and another which you have heard

described in the testimony. Now all these things, apparently, had some effect in enhancing or increasing the value of that leasehold.

"Now it is that increase simply that you are to determine. . . . and I want to emphasize and make clear that you do not pay for loss of business, and do not pay for installation of fixtures in other places, and all that testimony, as far as it was introduced, was simply for the purpose of helping you to determine the value of the place as it was with those improvements there. So that you are now to determine the value of the leasehold interest, or the difference between the rental value and the actual value, and the right to use and occupy on January 28, 1932." The petitioner took no exception to the charge as given and presented no requests to charge. Therefore, it is well settled, the law governing the instant case was fixed by the trial justice in his charge. *Mingo* v. *R. I. Co.*, 42 R. I. 543.

There is substantial authority supporting the view taken by the trial court as to the measure of damages when the condemnation of a leasehold interest is involved. *Des Moines Wet Wash Laundry* v. *City of Des Moines*, 197 Ia. 1082; *McMillin Printing Co.* v. *Railroad Co.*, 216 Pa. 504; *Welsbach Street Lighting Co.* v. *City of Philadelphia*, 178 A. (Pa.) 126; *Bales* v. *Wichita Midland Valley R. R. Co.*, 92 Kan. 771. The petitioner, however, now for the first time urges that a somewhat more liberal rule of damages, and one different from that which was relied on by him in the trial court, particularly in relation to trade fixtures and machinery, such as is set out in *Matter of Wilcox*, 142 App. Div. (N. Y.) 680; *In re Block Bounded by Avenue A*, 122 N. Y. S. 321; *Matter of City of N. Y. (North River Water Front)*, 118 App. Div. (N. Y.) 865, affirmed 189 N. Y. 508, should be applied to the evidence herein. It is clear that he can not successfully maintain this position because of his failure to object to the charge as given. Under the present record, the question of the rule of law to be applied

in fixing damages in a proceeding of this type is not before us, and we express no opinion thereon.

Both parties offered evidence, by witnesses having expert knowledge of real estate and leaseholds in Westerly, concerning the fair value of the petitioner's interest under the lease at the time of condemnation. Such a witness produced by the petitioner fixed this value at $1,650, while one for the respondent testified the value to be $1,100, and another that it would be $714 at the time in question. Each of these witnesses arrived at his estimate in the same general manner, viz.: by fixing the fair monthly rental value of the premises at the date of condemnation, by deducting therefrom the monthly rent which the petitioner was obligated to pay under his lease, and then by multiplying the difference by thirty-three, the number of months the lease still had to run. The testimony showed that these witnesses, in giving their opinion, took into consideration the improvements of a permanent nature such as new floor, new front, panelling and piping, which the petitioner had placed in the restaurant, as tending to make it a more suitable and more attractive place, with the probability of doing a better business therein, and so enhancing the value of the lease. In addition, the petitioner's expert witness in reaching his estimate of such value gave consideration to the other items which had been put in evidence, such as cost and value of fixtures and equipment, and the expense of moving, and setting up the business in a new location. In this connection, however, the expert witnesses for the respondent testified that they had taken into consideration only what they believed to be fixtures, and not other equipment and appliances, and that they had excluded the expense of transferring such articles to another place and installing them there.

The petitioner contends that it clearly appears that the expert witnesses based their opinions chiefly on the rental or subletting value of the premises, and did not give enough consideration to the value of the improvements and fixtures.

He argues that normally rent is merely a return on a capital investment, and that the value of his leasehold interest should more clearly approximate the amount of money actually expended upon it. He also urges that the jury, in arriving at their verdict, must have failed to give proper weight to the evidence of the cost and value of the improvements made by him, and in so doing failed to follow the court's instructions.

We do not agree with these contentions of the petitioner. The jury would not have been justified in following the reasoning now suggested by him, under the charge given them when applied to the evidence in the case. The jury heard the expert witnesses testify as to how and upon what basis they reached their several estimates of the fair value, on January 28, 1932, of petitioner's leasehold interest. They gave evidence that the presence of the petitioner's permanent improvements in the restaurant and certain other elements were definitely considered in arriving at the figures given. From this standpoint, therefore, the existence of all these various elements entered into and had a part in making up the fair rental value of the property in question at the time of condemnation. The jury were carefully instructed not to allow the various items of cost and expense, to which the petitioner is now calling our attention, as separate and distinct elements of damage, but to give them consideration only as they might assist in determining the fair value of his interest in the lease. It was within the province of the jury to decide what weight they would give to any particular part of the evidence, and there is nothing to indicate that they did not properly apply the law, as given them by the court, to the testimony before them, or that they reached their finding through prejudice or any other improper influence. The figure arrived at by the jury in their verdict represents a fair average of the expert witnesses' estimates of the value of the petitioner's leasehold on the date of condemnation.

The trial justice has sustained the verdict, and has stated that in his judgment it does substantial justice between the parties. We have examined the record and the evidence herein and find no reason for disturbing the verdict or the action of the trial court in connection therewith.

The plaintiff's exception is overruled, and the case is remitted to the superior court for the entry of judgment on the verdict.

*Knauer & Fowler*, for petitioner.

*John P. Hartigan, Atty. Gen., John J. Cooney, 2nd Asst. Atty. Gen.*, for respondent.