JACK ESTELLE and GEORGIS M. ESTELLE, appellees, v. IOWA STATE HIGHWAY COMMISSION, appellant.

No. 50841.

(Reported in 119 N.W.2d 900)

1240

FEBRUARY 12, 1963.

REHEARING DENIED APRIL 9, 1963.

Evan Hultman, Attorney General, of Des Moines, C. J. Lyman, Special Assistant Attorney General, and Henry M. Keyes, State Counsel, Iowa State Highway Commission, both of Ames, and William L. Meardon, of Iowa City, for appellant.

D. C. Nolan and G. A. Schlaegel, both of Iowa City, for appellees.

PETERSON, J.—This case involves the condemnation of a leasehold. In 1951 plaintiffs rented a tract of land, 100 by 150 feet, at or near the junction of Highways No. 218 and No. 1 in Iowa City. The land was rough and had about 15 trees upon it, but with no buildings. Plaintiffs at first built a small shed

which they used for some time as a fruit and vegetable stand. In 1956 they converted the building into a drive-in root beer stand. They first rented under oral lease from year to year, and in 1957 they entered into a written lease with the owners, Mr. and Mrs. Wm. T. Goodwin, for a 10-year term, which ran from June 12, 1957, to June 12, 1967. Upon the making of this lease they started a restaurant business and extended their building to where its size became approximately 42 by 48 feet. They cleared and leveled the land, poured a concrete floor for the building, and made a parking place of rock and gravel as to the remainder of the lot.

In 1958 the Highway Commission commenced negotiations for acquiring plaintiffs' leasehold. Same were not consummated, and on July 29, 1960, the leasehold was condemned. The Sheriff's jury awarded plaintiffs $11,000. From this award plaintiffs appealed. Upon trial of the appeal the District Court jury awarded plaintiffs $20,500. The Highway Commission appealed.

Appellant assigns 14 alleged errors. Many are inconsequential. Some are not prejudicial to defendant. We can summarize those meriting our attention as follows:

1. The trial court erred in failing to instruct the jury as to the proper measure of damages.

2. Error was committed in ruling that personal property (the equipment in the restaurant) even if it can be adapted to other business, or to personal use, could be considered in fixing the value of the leasehold.

3. The court erred in admitting the evidence of some witnesses that they took into consideration the matter of a renewal of the lease in testifying as to value of leasehold, and in rejecting defendant's requested instruction 3 as to such question.

4. It was error for the court to admit any evidence that plaintiffs had a compensable interest in the building, in that the tenant had only a restricted right of removal as to the building.

5. The court erred in not submitting appellant's requested instruction that the jury should not give attention to costs, interest and attorney fees.

6. The verdict was excessive.

I. Plaintiffs started their business in the manner as heretofore stated. They expended substantial sums in developing the ground occupied by the restaurant, and in building and equipping the restaurant property.

The Fifty-eighth General Assembly in 1959 amended section 472.14, Code of Iowa, which pertains to the appraisement and report of commissioners, by adding to said section the following sentence as to personal property:

"In assessing the damages the owner or tenant will sustain, the commissioners shall consider and make allowance for personal property which is damaged or destroyed or reduced in value."

The written lease between Mr. and Mrs. Goodwin and plaintiffs provided that they should pay $50 per month rental but that lessors were under no obligation to furnish anything except the land. From 1951 until 1958 plaintiffs improved the land by making the following improvements:

1. Removed the trees and excavated and leveled the balance of the lot.

2. Purchased and spread upon the part of the lot not used for the restaurant building many tons of rock in order to make it usable for parking cars.

3. Oiled the rock in order to make and keep it in condition for driving purposes.

4. Purchased all lumber and other material necessary for the building of a proper restaurant building.

5. Connected all utilities such as electricity, water and sewer to the building not only for general usage but also for their toasters, electric sign, and connection with the well they drilled.

6. Drilled a 55-foot well on the premises.

7. Installed a complete concrete floor for the restaurant, and for walks adjoining the building.

8. Installed a gas furnace for the heating of the building.

9. Purchased and installed complete kitchen equipment and all the necessary fixtures, dishes and other utensils for the proper maintenance of a modern restaurant.

■ II. The primary question in this case pertains to measure of damages. It was necessary that this be carefully outlined in the trial court's instructions, and that the trial court guard the record carefully to keep out immaterial and extraneous matters. It is our opinion the trial court meticulously and carefully accomplished this purpose.

The substance of instructions 6 and 10 as to the measure of damages is as follows: "* * * The measure of damages is the fair and reasonable market value of the unexpired term of the lease with the building, fixtures and other personal property located thereon, on July 29, 1960, immediately before the appropriation by defendant, less the rental reserved for the remainder of the lease and less the reasonable value of any personal property removed by plaintiffs after the condemnation.

" * * * You may consider all the varied elements of value as described by the evidence, in regard to the location of the premises, the surroundings thereof, its accessibility, the use to which same has been put, its improvement, nature, character, type and general construction of the building and fixtures located thereon, the depreciation as to said building, fixtures and personal property, if any, since their construction or purchase * * * and any other material facts disclosed by the evidence. * * *.

"Plaintiffs are not entitled to recover the cost of any specific item or the sum total of various specific items as such, and the matters above suggested and other facts and circumstances as shown in the evidence should be considered by you only insofar as they may bear upon the fair and reasonable value of plaintiffs' property at the time of its condemnation on July 29, 1960."

Four witnesses testified on behalf of plaintiff as to the value of the property on the date of condemnation. Mr. Estelle testified as to such damages, after qualifying himself as to complete knowledge of all facts. He said plaintiffs' damages were in the amount of $35,000.

The witness, Mr. Homer Berven, testified he lived in Iowa City and that he had been a licensed real-estate broker in the State of Iowa since 1946. He had familiarized himself with property in Iowa City and vicinity, including leaseholds and

real estate generally. He had made a special study of appraisal and had used what are known as the Stevens method and the Wenslick method, both of which are recognized by appraisal authorities. He had engaged in considerable FHA appraisal work and had appeared on occasions as a witness in condemnation cases. He testified that taking the three elements into consideration of (1) the unexpired term of the lease of six years, ten months and seventeen days, less reserve rents, and (2) taking into consideration the building, duly depreciated and (3) depreciated value of restaurant equipment, after deducting the salvage secured from the auction sale of the equipment, he arrived at a value of $28,000.

Mr. Walter C. Chudwick testified he was a resident of Iowa City. He holds a real-estate broker's license issued by the State of Iowa in 1935. He sells real estate of all kinds in Iowa City and vicinity; he has been an appraiser for the Home Owners Loan Corporation; he has been a GI appraiser and has represented various insurance companies with reference to appraisal of property in the last few years. He testified he made a careful examination of the plaintiffs' property at or about the time it was being condemned and that he valued same at said time at $29,200.

Mr. J. F. Fairbank testified he is a resident of Iowa City and has lived in the city for 41 years. He was in the restaurant business in said city for 30 years but retired from that business three years ago and now holds a real-estate broker's license. He was well acquainted with plaintiffs' restaurant on Highway No. 1 immediately west of Highway No. 218 and of the restaurant equipment. His appraisal as to the value of the property on the date of the condemnation was $29,412. He described the building and the fixtures in detail.

Three witnesses testified on behalf of defendant. Mr. James W. Pearson stated he was a realtor and real-estate appraiser in Iowa City and had been for the past 20 years. He has appraised property for the Iowa State Highway Commission, various insurance companies, FHA and local banks. He testified he was familiar with plaintiffs' place of business and restaurant and in his opinion the leasehold, with building and restaurant

equipment less depreciation were of the value on the date of condemnation of $5200.

Mr. Rolland Smith testified he was in the real-estate business in Iowa City and had been since 1946. He took a special course in real-estate appraisals at the Stevens Appraisal School. He has appraised for Veterans Administration, insurance companies, banks and Iowa State Highway Commission. He owned a restaurant in Iowa City for 26 years and is familiar with restaurant equipment. He appraised plaintiffs' leasehold, with building and restaurant equipment, properly depreciated, and after deducting the salvage secured at the auction sale, at a value of $5454.75.

Mr. Samuel B. Whiting testified he is in the real-estate and insurance business in Iowa City and has been for nearly 30 years. He holds a real-estate broker's license and has made appraisals for the Highway Commission and for banks in the Iowa City area. He testified he was familiar with plaintiffs' cafe and with the building and restaurant equipment. He testified the valuation of the leasehold, building and equipment depreciated, and after deducting the net proceeds of the auction sale, was $5200.

■ The question of the value of leaseholds and the various elements involved therein varies as to the facts of each case. This court properly stated in Des Moines Wet Wash Laundry v. Des Moines, 197 Iowa 1082, 1085, 198 N.W. 486, 34 A. L. R. 1517: "It is impossible to specify all of the elements that enter into such a problem. In fact, all of them cannot be anticipated, and many of them are developed in the course of the litigation consequent upon the exercise of the right of eminent domain. They will vary with the character of the property affected and the uses to which the property is applied."

The case of Des Moines Wet Wash Laundry v. Des Moines, supra, involved the condemnation by the City of Des Moines of a laundry plant. Appellant-City contended the measure of damages was the fair rental value of the leased premises for the unexpired term of the lease. The mere rental value of the premises would allow nothing under appellant's theory for the building and improvements on the premises, the going value of

a profitable business, and many other elements which might reasonably go into the value of the unexpired term of the lease by reason of the unique use to which the premises are being put.

In said case our court outlined clearly and sharply the measure of damages, and it is apparently substantially the rule adopted and used by the trial court in the case at bar. This court approved statements made to the jury in the trial court in the Wet Wash Laundry case (page 1084 of 197 Iowa) as follows: " 'You may consider all the varied elements of value, as disclosed by the evidence in the case, in regard to the location of said premises; the surroundings thereof; its accessibility; nearness to the business center; the use to which the same has been put; the purpose for which the buildings and improvements located thereon are used; the general construction of such buildings; the depreciation of such buildings, if any, since they were constructed, by reason of their use for the purposes for which they were constructed and used; the manner of using the same in connection with the business plaintiff was conducting with the equipment in said building.' "

We have considered the question of value of personal property since the adoption of the amendment to section 472.14 in the case of Gaar v. Iowa State Highway Commission, 252 Iowa 1374, 1377, 110 N.W.2d 558. In that case the owner of the leasehold had removed all personal property from the hotel prior to the condemnation. We held there was, therefore, no personal property in the highway route to be condemned. The value of a statement in the case as far as the present case is concerned appears in the following quotation: "* * * They could sell; move the building onto other real estate; remove and store or sell the furnishings * * *. They could also maintain their status quo and, if and when the appellee [Highway Commission] took the properties, recover just compensation for the taking thereof, together with damages representing the loss in value to the personal property."

It is a well established rule that witnesses cannot testify as to the cost of buildings and equipment as a part of the damage to the leasehold, even if the buildings and equipment are completely destroyed or disposed of. After a witness has

been properly qualified he can testify as to the value of the leasehold at the time of condemnation. In arriving at the proper value, the witness may, in arriving at his answer, consider cost of construction, less depreciation, and any other pertinent or material factors. This is not for a jury to speculate upon. It is confined to the testimony of qualified witnesses.

In the instant case the trial court properly gave instructions, and ruled upon admission of evidence on such basis. For example, appellees' counsel inquired of Mr. Estelle as to cost of the building and of personal property. Proper objection was sustained.

III. While the primary and predominant question in this case is the measure of damages as between plaintiffs and defendant, several auxiliary contentions are made by appellant which should receive our attention.

1. Appellant contends the trial court erred in its ruling on adjudication of law points in holding that personal property which can be adapted to other business or to personal use could be considered in fixing the value of the leasehold, when completely taken.

The condemnation proceeding put plaintiffs out of business. As shown in the testimony of Mr. Estelle, one of the plaintiffs, he tried to find another location to which he could move his business. He testified:

"Q. Well now, did you have any place to move it to? [the restaurant equipment]

"A. No. I didn't have no place to put it.

"Q. Was there any location of similar character you could have moved into at that time?

"A. No. First time the Highway talked to me, 1958, I started hunting. I had several real-estate people hunting places for me; they couldn't locate any I could get right away. * * *

"Q. State whether or not you attempted to find a comparable location where you could replace the business in this community?

"A. Yes. I tried for several months to find a place and I had two real-estate companies hunting places but they couldn't

locate me anything that I could build and get started again quick enough before I had to get out of this place. * * *."

Mr. Estelle testified on re-redirect examination:

"I talked * * * about moving the present building over farther but Mr. Goodwin said no. This was after the Highway Commission had been there and done some surveying. Mr. Goodwin was afraid to either sell or lease any ground along there for fear that if the Highway took it he would be in a lawsuit with people he had sold or rented to so we just dropped it."

In view of the fact that it was impossible for plaintiffs to secure another location comparable to the one defendant condemned and in view of their inability to move their restaurant building and their restaurant equipment to a location near the one defendant condemned, the adaptability of the personal property for other business or for personal use was, in fact, immaterial as long as it was all taken or sold on a forced sale. The record disclosed there was no personal use of material value. There was nothing for them to do except salvage what they could from the restaurant equipment through a public auction sale, and let defendant take possession of the property and raze the building. This is, in fact, what happened.

Plaintiffs' situation was somewhat the same as described in the Des Moines Wet Wash Laundry case by the court at page 1083 of 197 Iowa, as follows:

"The condemnation and removal of the leased premises by the city terminated plaintiff's business and destroyed its plumbing and steam connections, installed and equipped at its own expense * * *."

2. Appellant contends the trial court erred in admitting evidence that plaintiffs could find no comparable location on which to continue their business after condemnation. We have to some extent considered the above assignment of error in Division III, paragraph 1. This has some elements of similarity to the case of Redfield v. Iowa State Highway Commission, 251 Iowa 332, 340, 99 N.W.2d 413, 85 A. L. R.2d 96. It is true said case pertained particularly to the sale price of comparable properties located in the vicinity of the property condemned. Iowa

had previously followed what was referred to as the Pennsylvania rule as distinguished from the Massachusetts rule. In the case we said: "* * * after considering the advantages and disadvantages of each rule, being aided by well considered opinions of learned courts on both sides of the question, we feel it is advisable now to join those who adhere to the Massachusetts rule [permitting evidence of value of comparable property] and we now adopt that rule."

In the case at bar the only comparability which was considered by any of the witnesses was the testimony of Mr. Berven, witness for plaintiffs, where he made a comparison of rentals. He testified in considering the lease:

"I considered that the building could be used only for restaurant purposes. I considered comparable rentals, but I could only find one and that was the Dog-and-Suds out on Highway 6. It is a much smaller building but I am now speaking of land only. * * * I was speaking about the rental of the land alone, independent of the building. I took that into consideration in arriving at the fair rental value of the land rented by Mr. Estelle.

"Q. And what did you find that to be, the rental value of that land where the Dog-and-Suds is located? * * *

"A. $100 a month."

3. Appellant vigorously contends the court erred in rejecting its requested Instruction No. 3 which pertains, as appellant alleges, to the testimony of some witnesses that they took into consideration in their appraisal as to the damages, the matter of renewal of lease, when in fact the lease gave plaintiffs no right of renewal.

An examination of the record does not sustain appellant's contention as to this matter. Mr. Homer Berven testified as follows:

"I took into consideration the fact that he [Mr. Estelle] might be able to renew the lease but did not assess any value to it because the lease had not been renewed. * * * I gave no value to a possible renewal by Mr. Estelle."

Mr. J. F. Fairbank, one of plaintiffs' witnesses, testified:

"In arriving at my value of the restaurant business, the lease rights and so forth, I took into consideration the value of his lease, the access to the building itself, and the restaurant equipment, *and that is all*." (Emphasis ours.)

Mr. Walter C. Chudwick, one of plaintiff's witnesses, did testify about the renewal as follows:

"I considered that there would probably be a renewal in arriving at the value and consideration of this factor has an effect on the value I gave."

However, this matter was considered by the trial court when defendant's counsel moved that the testimony of Mr. Chudwick be stricken, for, among other reasons, the lease "would be renewed, and took said renewal into consideration in arriving at his value * * *." The court said: "Overruled. You were the one that brought out the evidence there with reference to the oral agreement, they didn't. Now so far as striking all of this witness's testimony, that is overruled for the reason that the jury can determine what weight or credit they want to give his testimony. That isn't up to me to do that."

Plaintiff, Mr. Estelle, as owner of the property with his wife, did not offer any testimony including renewal of the lease.

█ 4. Appellant contends it was error for the court to admit any evidence that plaintiffs had a compensable interest in the building. The Highway Commission contends the lease did not confer on the tenant any right of removal; the lessor controlled the removal of the building and it should not be considered a part of the leasehold which was condemned.

Paragraph 9 of the lease provided as follows:

"(9) The Lessees agree and undertake that at the expiration of this lease, or any renewal thereof, they will, if the Lessors so desire, restore the property to the same condition it was in at the time of the making of this lease, and deliver the property to the Lessors in substantially the same condition it was in at the time the Lessees received the same, except that Lessees shall not be required to replace any trees that may be removed in order to install the restaurant and parking area."

It will be noted that the primary statement in the lease with reference to the building is as follows:

"The Lessees agree and undertake at the expiration of this lease, or any renewal thereof, they will * * * restore the property to the same condition it was in at the time of the making of this lease * * *."

This placed upon Lessees the obligation of removing the building.

It is true that the clause appears in the lease that Lessees should remove "if the Lessors so desire." Appellees attempted without success to have both Mr. Goodwin and Mr. Estelle testify as to an oral agreement between them as to the nonnecessity on the part of plaintiffs for removal of the building. The court sustained all objections to such testimony on the ground that it was testimony varying a written lease. It is not necessary that we pass upon this legal question.

Our position is that unless Mr. Goodwin, the landlord, affirmatively notified plaintiffs prior to the time the lease expired, or in this case it would be prior to the time defendant took possession of the property, that said lessor desired possession of the building, it remained the property of the plaintiffs and was part of the condemned leasehold.

No such notice was given, either verbal or written. The Highway Commission removed and destroyed the building erected by plaintiffs on land owned by Mr. and Mrs. Goodwin. The record does not disclose that the building was considered when the fee was condemned or settled for. On the basis of the record we have the right to assume that all personal property, including the building, was included in the condemnation and in the appraisals of the leasehold by the witnesses.

█ 5. Appellant contends it was error on the part of the court not to give requested Instruction No. 1 in which appellant contends the court should instruct the jury they were not to consider or take into account the matter of court costs, interest or attorney fees for plaintiffs' attorneys.

It was not error for the court to fail to give such instruction. The statute is clear in condemnation cases as to how the court costs and interest, and attorney fees for plaintiffs' attorneys

shall be paid. See sections 472.23, 472.24 and 472.33, Code of Iowa, 1962.

6. The final assignment of error by appellant is that the verdict of the jury was excessive and contrary to law.

On this question each condemnation case is based upon the peculiar facts of the particular case under consideration. The citation of other cases as to the amount of damages allowed in leasehold cases would be of no value.

In the case at bar Mr. Goodwin, the landlord, analyzed the situation of the development of plaintiffs' leasehold on this property in well expressed language as follows:

"At the time the property was leased to Mr. Estelle, it had no weatherproof surfacing, rock, or anything like that, but was a bare piece of ground with trees and it was just ordinary pasture land. Mr. Estelle made the improvements on the ground in reference to removing the trees and leveling it off as that was the understanding we had. When Mr. Estelle took the property over, the main utilities, water, sewer, gas, and lights, were on the curbing along Highway No. 1 and Mr. Estelle did all the work in attaching the utilities to the restaurant. I did not make any improvements upon the ground myself. There were approximately 15 trees of sizes varying from six inches up to twelve inches in diameter. Part of the ground was rather sloping and on about half of the ground we had dumped some dirt from a previous building that we had erected on the corner for a service station. It took quite a bit of dirt to level it off so that it would be acceptable for parking, and I would imagine there was probably 20 hours of bulldozing work. * * *

"Mr. Estelle put in a deep well at his own expense with a pressure pump on it. Since the restaurant business has been established by Mr. Estelle, I have been living right south of it and have observed that his business gradually increased and developed from year to year and observed that there was more traffic and more people coming to his premises."

In view of all the facts shown in this case, the verdict was not excessive.

Considering the complete record, we do not find reversible error.

The case is affirmed.—Affirmed.

All JUSTICES concur.