Fort Dodge, Des Moines & Southern Railway, appellant, v. American Community Stores Corporation, Tyler B. Gaines, trustee, appellee and cross-petitioner; State of Iowa, third-party defendant and appellee.

No. 51480.

(Reported in 131 N.W.2d 515)

1346

November 17, 1964.

Whitfield, Musgrave, Selvy & Kelly, of Des Moines, for appellant.

Connolly, O'Malley & Conley, of Des Moines, for appellee and cross-petitioner.

Evan Hultman, Attorney General, C. J. Lyman, Special Assistant Attorney General, James E. Thomson and Henry M. Keyes, State Counsel, all for third-party defendant and appellee.

SNELL, J.—Plaintiff, vendor, sought specific performance of a contract for sale of real estate. Defendant, American Community Stores Corporation, Tyler B. Gaines, trustee, vendee, denied merchantability of the title as tendered, brought in the State of Iowa as a third-party defendant and then cross-petitioned against the State seeking a declaratory judgment adjudicating the rights of all parties.

The trial court found that plaintiff's title was not merchantable and denied relief. Plaintiff has appealed.

The property involved is in the business district of Ames. It consists of several lots or parts of lots in Block 2, College Park Addition to City of Ames.

It is north of Lincoln Way, also known as Highway No. 30, south of Second Street, and west of Grand Avenue also known as Highway No. 69.

Plaintiff's title to the several lots was not acquired from a common source. Only part is subject to the objections raised by defendant, but that fact has not been treated by the parties as of any importance. Under the issues defendant is entitled to merchantable title to the entire tract covered by the contract of purchase or denial of specific performance.

The following part of a plat introduced into evidence shows the tract proposed to be sold and its location at the intersection of Lincoln Way and Highway No. 69.

On February 5, 1962, by written contract plaintiff agreed to sell and defendant agreed to buy for the sum of $66,000 the several lots and parts of lots within the heavy outline in the foregoing plat. The lots were specifically described.

The pertinent part of paragraph 1 of the contract is as follows:

"The party of the first part hereby sells to the party of the second part, and the party of the second part hereby purchases from the party of the first part, free and clear of any and all liens and encumbrances except building restrictions and easements, the following described real estate:"

The legal description of the property sold followed.

Paragraph 3 of the contract provided:

"The Vendor will deliver to the Purchaser an abstract of

title to said premises within thirty (30) days after the date of this contract for preliminary examination by the Purchaser, which abstract will show a good and merchantable title to said premises and the Vendor. In the event the Purchaser shall find an imperfection in the title, the Vendor will have a reasonable time to act to correct same."

The pertinent part of paragraph 8 of the contract provided:

"On obtaining possession of premises, the Purchaser will pay the Vendor $60,000, that amount being the balance of the purchase price and the Vendor will, simultaneously with the payment of $60,000 purchase price, deliver to the Purchaser a duly executed warranty deed, with revenue stamps attached, to the above described real estate, which warranty deed shall convey a good and merchantable title in said premises to the purchaser, free and clear of any and all liens and encumbrances."

Plaintiff tendered an abstract of title for examination. Defendant objected to the title as unmerchantable. Being unable to satisfy defendant's objections plaintiff sued for specific performance.

Prior to 1937 plaintiff owned a tract of land in Ames bounded by Highway 69 on the east and Highway 30 (Lincoln Way) on the south. The property then owned by plaintiff appears as Lots 11 and 12 on the plat, supra. The small area numbered 13 between Lots 11 and 12 is an alley. The State needed additional land for highway purposes. By negotiation the State purchased the tract west of plaintiff's then owned property and within the heavy outline on the plat. The State then traded this land to plaintiff for land then owned by plaintiff that did adjoin Highways 30 and 69. The land transferred by plaintiff to the State was for improvement of Highways 30 and 69 and to permit the construction of the underpass on Highway No. 69.

The transfer from the State to plaintiff was by two separate deeds, one dated September 29, 1937, and one dated January 31, 1938. The deeds contained no warranty of title but did incorporate the restrictions of section 4755-f3, Code of 1935, now appearing as section 306.18, Code of 1962.

Section 306.18, Code of Iowa, provides:

"Conditions. Any sale of land as herein authorized shall be upon the conditions that the tract, parcel, or piece of land so sold shall not be used in any manner so as to interfere with the use of the highway by the public, or to endanger public safety in the use of the highway, or to the material damage of the adjacent owner."

Each deed from the State to plaintiff provided:

"Upon condition that neither said premises nor any part thereof shall be used in any manner as will interfere with the use of the public highways of the State of Iowa by the public, or endanger public safety in the use thereof, or to the material damage of adjacent property."

Because of these provisions in the deeds defendant rejected the tendered title as not merchantable.

By stipulation it appears the property involved had never been used in connection with or for the improvement, maintenance or use of a highway.

Plaintiff tried to obtain from the State through the highway commission the removal of the restriction or an interpretation to allow construction of a supermarket but without success.

Defendant purchased the real estate for the purpose of building and operating a supermarket thereon consisting of between 15,000 and 19,250 square feet of floor space and a car parking area of about 190 stalls with access to Lincoln Way. It was anticipated that there would be a 6000 customer car count at the store weekly.

The traffic now in the area of plaintiff's property exceeds the design capacity of the highways. The traffic count is the second highest in the state. It had at time of trial increased from an average of 16,730 vehicles per day in 1955 to 17,095 in 1958, to 19,825 in 1960 and to 22,184 in 1962. In 1955 approximately 4000 to 4500 vehicles were considered to be through traffic, not originating in Ames. A sizeable increase in traffic was expected. Much of the great traffic generation in the area was attributed by witnesses to Iowa State University, the Iowa Highway Commission offices nearby, and the general layout of the City of Ames.

The evidence indicated that the use contemplated by defend-

ant would create traffic problems, reduce the capacity of the intersection, increase congestion, add to the traffic accident potential and interfere with the use of the highway and the safety of the traveling public.

I.   The trial court found plaintiff's title unmerchantable. Defendant on appeal supports this finding but by bringing in the State as third-party defendant apparently hopes that the objectionable restriction will be found invalid or inapplicable to defendant's proposed use of the property. Our consideration of the problems in the case is not limited to the order in which they were presented by the separate litigants. The case is in equity and our review de novo.

■   II.   As one of the questions on appeal plaintiff says that section 306.18, Code of Iowa, is unconstitutional. There is no constitutional question before us. No such question was raised in the trial court. Constitutional questions cannot be raised for the first time on appeal. Jacobs v. City of Chariton, 245 Iowa 1378, 1394, 65 N.W.2d 561, and cases cited therein.

■■   III.   "A merchantable title, as recognized and accepted in this state, is one which a reasonably prudent man would accept in the ordinary course of business after being fully apprised of the facts and the law applicable thereto. [Citations] When called upon to determine whether an abstract of title shows a merchantable title, unless the specific objections urged to the title have been definitely determined by the courts or are so clear as to not generate a doubt, the court need not pass upon the merits thereof. It is sufficient if the court finds the objections urged present a doubtful question which may submit the objector to good faith litigation regarding same. If so found, then under our acceptable standard of title the same is not merchantable." Holliday v. Arthur, 241 Iowa 1193, 1196, 44 N.W.2d 717, 24 A. L. R.2d 1302. See also Tesdell v. Hanes, 248 Iowa 742, 746, 82 N.W.2d 119.

■   The provisions in the deeds by which plaintiff acquired title constitute restrictions or limitations on the use of the property as distinguished from an affirmative easement. A restriction such as we have here is defined in 57 A. L. R., page 1426, as a limitation upon the manner in which one may use his own land

and may or may not involve a grant. Here the restriction was contained in the grant. Plaintiff accepted title subject to the restriction. That it may be a limitation on the use of the property contemplated by defendant is obvious from the issues and evidence in this action.

In 55 Am. Jur., Vendor and Purchaser, section 246, it is said:

"The obligation of the vendor in a contract for the sale of land to make a good or marketable title free and clear of encumbrances entitles the vendee to a title free from any restrictions upon the use of the land which either at law or in equity would bind the land in his hands and affect his full enjoyment thereof. In the absence of anything to the contrary in the contract, any such restriction which lessens the value of the land for general purposes is regarded as a defect in the vendor's title, giving the purchaser the right to reject the title and depriving the vendor of the right to compel the purchaser to perform. * * * As a general rule, a court of equity will, when the land is subject to such restrictions, decline, when the vendor seeks specific performance of the contract, to compel the vendee to take the land subject thereto."

In 49 Am. Jur., Specific Performance, section 95, page 112, it is said: "Equity will not compel a purchaser to accept a title which may impose the risk of litigation upon him to uphold it, even though it might be declared good at law as a consequence of the litigation."

Plaintiff's title when tendered to defendant was subject to a limitation of undetermined extent and the title was not such a title as was called for by defendant's contract of purchase. Specific performance will not lie.

IV. Plaintiff argues that the limitations on the use of the property are in the nature of a negative easement appurtenant and as such were waived by the contract between plaintiff and defendant.

Plaintiff's conclusion based upon this designation of the restriction on the use of the property is untenable.

A negative easement is defined in 28 C. J. S., Easements, section 3d as a right in the owner of the dominant tenement to

restrict the owner of the servient tenement, in respect of the tenement, in the exercise of the general and natural rights of property. In section 4 an easement appurtenant is defined as an incorporeal right which is attached to a superior right and inheres in the land to which it is attached. It is in the nature of a covenant running with the land. There must be a dominant and a servient tenement.

In the case at bar the State of Iowa was the owner of the property. By its deeds it preserved its status as the owner of the dominant estate. That status was preserved for the protection of the public in the use of adjacent highways. The State through its interest in the highways retained the dominant tenement.

The estate acquired by plaintiff was servient thereto. That servient status attached to the land. Such a servitude is not removed by a contract or sale by the servient owner to a third party.

V. The parties stipulated that this particular property had never been used in connection with or for the improvement, maintenance or use of a highway. It is true that the physical property has not been so used in the past. It was, however, acquired in connection with a highway program and when sold its use was restricted so as to not "interfere with the use of the public highways of the State of Iowa by the public, or endanger public safety in the use thereof, * * *."

This is not a case where a restriction has been imposed upon plaintiff or the land without the owner's consent. Plaintiff accepted deeds from the State with the restrictions clearly recited therein. The deeds have been of record since February 1938. Plaintiff's rights were limited therein and thereby. The voluntary acceptance of a deed poll binds the grantee to the performance of covenants contained therein. McSweyn v. Inter-Urban Railway Co., 256 Iowa 1140, 1145, 130 N.W.2d 445, 448, and authorities cited therein; 14 Am. Jur., Covenants, Conditions and Restrictions, section 4; 21 C. J. S., Covenants, section 8.

There was no authority for the transfer of the property to plaintiff, except the statute now appearing as section 306.18.

The only title plaintiff has is by virtue of the deeds incorporating the provisions of this statute therein. Otherwise plaintiff has no title at all. Plaintiff's title is subject to the restrictions imposed by the grant. Plaintiff may not accept the benefits and at the same time escape the restrictions voluntarily accepted.

VI. The restrictions on plaintiff's title are in some respects comparable to those created by establishment of a controlled-access highway in that they impose restrictions on the use of the property.

The Fifty-sixth General Assembly by declaration of policy and enabling statutes provided for controlled-access facilities. The present statutory provisions appear in chapter 306A, Code of 1962. Under this chapter access to a highway may be regulated, restricted or prohibited by appropriate authorities. The highway commission has the right to regulate the means of access to or from abutting property provided its regulations are reasonable and strike a balance between the public and private interest. Property owners are entitled to reasonable access or as the authorities say "free and convenient access", but not at any and all points. The taking of reasonable access constitutes the taking of a property right and is compensable. Iowa State Highway Commission v. Smith, 248 Iowa 869, 82 N.W.2d 755, 73 A. L. R.2d 680, and authorities discussed therein. Belle v. Iowa State Highway Commission, 256 Iowa 43, 52, 126 N.W.2d 311, 316. See also a note in 43 Iowa Law Review 258.

The right of access inherent in the ownership of property may be sold or waived. It may be taken by eminent domain. When so taken it is compensable. A taking through the exercise of police power is noncompensable. Warren v. Iowa State Highway Commission, 250 Iowa 473, 478, 93 N.W.2d 60. Belle v. Iowa State Highway Commission, supra, loc. cit. 53 of 256 Iowa and page 317 of 126 N.W.2d.

If, by virtue of an unrestricted ownership, access has been enjoyed a taking thereof would be by eminent domain and would be compensable. This would be true regardless of the traffic congestion on the adjoining highway. In the case at bar, however, plaintiff has never had the right to use the premises in any manner as to interfere with the use of the public highway or

endanger public safety. Plaintiff's title so provides. Plaintiff has never had such right of access as would interfere with the public or endanger public safety.

The legislature has provided that the control of access is a necessary exercise of police power. Lehman v. Iowa State Highway Commission, 251 Iowa 77, 82, 99 N.W.2d 404.

The State exercised that police power in conveying title to plaintiff and retained to the State the right to invoke the prohibitory provisions and sanctions in the deeds.

Where there has been no preexisting right an owner may not complain because such a right is denied. Lehman v. Iowa State Highway Commission, supra, loc. cit. 83.

Here there are no preexisting rights in plaintiff or plaintiff's successors in interest. Plaintiff may not complain about the enforcement of a police power to which it agreed.

VII. Of interest, but not controlling because of what we have said, supra, we note this statement in the State's brief and argument.

"This appellee has no objection to plaintiff-appellant or defendant-appellee operating a supermarket on the subject premises by using access to the public highway system via Second Street bordering it on the north and also via the alley bordering it on the west, which leads to Elm Avenue."

Accepting this statement as a verity neither plaintiff nor defendant would be denied access. There would be some inconvenience and circuity of travel for some customers, but that is not a controlling element. Warren v. Iowa State Highway Commission, supra, loc. cit. 485 of 250 Iowa. A and S, Inc. v. Iowa State Highway Commission, 253 Iowa 1377, 1389, 116 N.W.2d 496.

VIII. Complaint is made by plaintiff because testimony relating to traffic on Highways 30 and 69 and the proposed use of the property was received.

Plaintiff sought specific performance. Defendant denied merchantable title was tendered because of the restrictions on the use of the property. Defendant sought a determination and declaration of rights. The effect of the restrictions on the use of the property in connection with highway conditions was the

issue. The traffic situation, past, present and as contemplated by the proposed use of the property was properly shown to determine the applicability of the restrictions.

IX. Plaintiff complains that the restrictions are discriminatory in that they do not treat plaintiff's property equally with all other property in the area. This complaint would relate to the constitutionality of the statute, section 306.18. We have said in Division II, supra, that no constitutional question is before us. The question before us is the restriction in the deeds to which plaintiff agreed by acceptance. See Division V, supra.

X. Public highways are created by statute, either directly or through power delegated to some agency of the state. The highway commission is an agency of the state and the legislature has delegated to it broad administrative and discretionary powers. We may interfere only if the acts or program of the commission are so arbitrary and unreasonable as to be beyond the police power of the state. A and S, Inc. v. Iowa State Highway Commission, supra, loc. cit. 1390 of 253 Iowa.

The retention of restrictive authority and the enforcement thereof in the case at bar is not so arbitrary and unreasonable as to permit us to interfere.

XI. Defendant, cross-petitioner, asked for a declaration of rights under the deeds.

We are not possessed of sufficient clairvoyance or gift of prophecy to lay down definite rules as to any future use of the property. We may not indulge in apocalyptic writing. What use may or may not impinge upon the restrictions depends on the use proposed and conditions then existing. The question before us is the use presently proposed by defendant.

The traffic in the area now exceeds the design capacity of the highways. The anticipated 6000 car count at the store weekly would mean 6000 cars in and 6000 cars leaving or an average of 1000 entrances and 1000 exits each week day. The evidence is clear that the generation of the additional traffic would create traffic problems, increase congestion, add to the traffic accident potential and interfere with the use of the highway by the traveling public.

The conditions in the deeds are valid. They are binding and enforceable against the real estate conveyed thereby. They constitute limitations on the use of the property. The title is not merchantable. The State under its police power may enforce the restrictive provisions in the deeds. The use proposed by defendant would be in violation of the restrictions in the title.

The trial court was right.

The case is—Affirmed.

GARFIELD, C. J., and THOMPSON, PETERSON and MOORE, JJ., concur.

LARSON, THORNTON and STUART, JJ., agree that the title is unmerchantable and that specific performance does not lie, but dissent from the rest of the opinion.

HAYS, J., not sitting.