**MODERN HEAT & POWER COMPANY, Appellant,**

**v.**

**Robert C. PAUL and Dorothy J. Paul, Merrill D. and Mary Jane Heavilin, Ralph L. and Ina E. Hughes, Appellees.**

**No. 52854.**

Supreme Court of Iowa.

April 9, 1968.

Joseph A. Billings, Des Moines, for appellant.

P. F. Elgin, Indianola, for Robert C. & Dorothy J. Paul, appellees.

Maynard Hayden, Indianola, for Merrill D. & Mary Jane Heavilin and Ralph L. and Ina E. Hughes, appellees.

MOORE, Justice.

The factual circumstances giving rise to this litigation are similar to countless other cases brought before the court in which seemingly sound, well-planned business transactions have gradually degenerated to a state necessitating judicial resolution.

On October 12, 1964 defendant Robert C. Paul signed a purchase order for "1 Bishop Steelite Deluxe Pear-Shaped Swimming Pool with tapered Wall, Knockeddown, unassembled and uninstalled—f. o. b. Carlisle, Iowa".

This purchase order listed the items to be furnished by plaintiff Modern Heat & Power Company. It also included:

"TERMS: The price of the above

listed items shown in the Purchase Order        $2490.00

Plus extra charge for Special Coping as Requested & Agreed Agreed        50.00

$2545.00

Plus 2% Sales Tax

The Purchaser shall pay $500 down upon signing of this contract, and cash upon delivery. If this pool is delivered on a partial basis, then 50% of the price of the pool shall be paid upon partial delivery, and the balance shall be paid on the final delivery.

"If the Customer meets the terms of the contract payment, then he may take a CASH DISCOUNT of $345.00 at the time payment is made."

All negotiations relative to the agreement were conducted by Mr. Paul and Kenneth M. Bishop who testified he was the sole manager of plaintiff company. Paul paid plaintiff $500 on October 12, 1964 and an additional $1000 on October 13, 1964 when he picked up materials necessary to commence construction of the pool. Paul procured no further material from plaintiff company until May 6, 1965 when he picked up some minor items. He made no further payment at that time. The evidence is conflicting concerning whether he had requested delivery of the balance of materials between October 13, 1964 and May 6, 1965, but it is undisputed Paul was a frequent visitor on company premises between December, 1964 and May, 1965.

On May 22, 1965 Paul picked up 40 pieces of coping from plaintiff. Coping is a cement item used for trimming and beautifying swimming pools. On May 27, 1965 Paul had workmen at the pool site and sent a Mr. Mark to obtain the balance of the coping. Plaintiff refused to make delivery. Immediately thereafter Paul went to plaintiff's office in Carlisle and was successful in acquiring what he thought was enough coping to finish the trimming. At that time he gave plaintiff a check for $350 and was required to sign a statement that he had sufficient funds to cover the check. Paul's prior checks had cleared the bank without difficulty. This last check bore a written notation placed thereon by plaintiff's employee, "Balance $397.56." This was not denied by plaintiff.

Paul testified he was shorted seven pieces of coping and was thereby prevented from completing the trimming. Testimony for plaintiff was that it was sufficient to complete that part of the pool. A point of difference was whether the purchase order impliedly allowed coping to be used on the steps as well as around the pool's edge. Paul, when he discovered he had not been supplied sufficient coping, stopped payment on his $350 check.

On May 29, 1965, Paul purchased a cashier's check made payable to plaintiff company for $747, the amount he considered sufficient to fulfill his obligation under the agreement taking into consideration the $345 cash discount. He then took this

check to plaintiff's office and demanded delivery of the balance of materials. Plaintiff, apparently assuming Paul was not entitled to the discount, refused delivery of the goods and stated the balance due was $1095. Conflicting testimony of those present in the office at that time renders it difficult to ascertain whether the check was actually tendered by Paul but it is reasonably clear Paul made it known he had such a check.

Later the same day Paul contacted an attorney who telephoned Bishop advising him of the check and Paul's request for delivery. On June 1, 1965 this attorney wrote plaintiff a letter confirming the existence of the cashier's check of $747. Plaintiff did not answer this letter. Bishop on cross-examination stated he did not remember such call or letter.

On June 9, 1965 Paul through his present attorney wrote plaintiff again requesting the balance of the material for the $747. The letter stated Paul would purchase the material elsewhere if reply was not had immediately. Plaintiff replied June 11, stating Paul had not performed as promised and called for payment of the balance, presumably $1095 although this figure was not specifically mentioned. Paul subsequently purchased the remaining materials from other sources at a cost of $900.95.

Plaintiff brought this equity action for foreclosure of its filed mechanic's lien for $1095. Paul sold his home on which the pool had been constructed to defendants, the Heavilins. They and the mortgagees, the Hughes, were joined with Mr. and Mrs. Paul as defendants. Paul counterclaimed for damages. As we point out, infra, denial of his counterclaim is not involved on this appeal.

The trial court denied foreclosure of the lien on the basis plaintiff had failed to prove it had furnished material for the pool which had not been paid for by Paul. Paul's counterclaim was also denied. Judgment was entered assessing half the costs against plaintiff and half against Paul.

Plaintiff has appealed. Paul has not cross-appealed. We, therefore, consider only the propositions asserted by plaintiff.

I. Code section 572.2 provides in part: "Persons entitled to lien. Every person who shall furnish any material or labor for * * * any building or land for improvement * * * thereof * * * shall have a lien upon such building or improvement, and land belonging to the owner * * * to secure payment for material or labor furnished or labor performed."

Plaintiff vigorously argues "furnish" under our mechanic's lien statute includes not only material actually used in the construction but also material which had been provided by the materialman and for which the owner had contracted to purchase. We need not consider the legal principles so asserted. The facts clearly defeat plaintiff's attempt to foreclose its claimed mechanic's lien. Paul had paid for all material received from plaintiff. Plaintiff refused without good cause to deliver the necessary remaining material to complete the pool. Paul was compelled to expend more than was owing on his contract with plaintiff.

II. The purchase order or contract was prepared by plaintiff. It provides that if delivery is made on a partial basis 50% of the purchase price is to be paid on partial delivery and the balance paid on the final delivery. It must be noted no provision is made for delivery and payment on or before a specific date. The contract is vague and unclear in this respect. We have often held ambiguities appearing in written contracts are to be construed against the author of the instrument. Freese v. Town of Alburnett, 255 Iowa 1264, 1269, 125 N.W.2d 790, 793; Huntsman v. Eldon Miller, Inc., 251 Iowa 478, 481, 101 N.W.2d 531, 533; Wenthe v. Hospital Service, Inc., 251 Iowa 765, 768, 100 N.W.2d 903, 905. See also 17A C.J.S. Contracts § 324, 17 Am.Jur.2d Contracts, section 275. Any uncertainty as to time for payment for Paul to be allowed the

benefit of the $345 discount must be resolved against plaintiff.

Paul was entitled to the discount when he offered payment by the cashier's check. Plaintiff has been paid for all material actually delivered to Paul and has retained the remainder.

III. Our review is de novo. Rule 334, Rules of Civil Procedure. In equity cases, especially when considering the credibility of witnesses, we give weight to the fact findings of the trial court, but are not bound by them. Rule 344(f)7. With these rules in mind we have carefully reviewed the record and conclude the trial court's judgment and decree as against plaintiff is correct.

Affirmed.

All Justices concur.