Joe **KINNEY** and Sylvia **Kinney**, Appellants,

v.

**CAPITOL–STRAUSS, INC.**, an Iowa corporation, et al., Appellees.

No. 55578.

Supreme Court of Iowa.

May 23, 1973.

Cahill, Lovelace, Poula & Wimpey, Iowa City, for appellant.

Shulman, Phelan, Tucker, Boyle & Mullen, Iowa City, for appellees.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

This declaratory judgment action was brought by plaintiffs (lessor) to determine whether under a "Ground Lease" agreement with defendants (lessee) the latter were obligated for additional rent when, during the course of the lease term, lessee claimed the right to use a portion of the leased area for a commercial campground. Trial court held lessee was under no obligation to pay additional rent. We affirm.

Lessor owned land in the northwest quadrant of the Oxford, Iowa, interchange on Interstate 80. In 1967 lessee entered into negotiations to lease a tract for certain uses as an interchange outlet. Originally the leased area was to be a unit. However, during preliminary discussions it was ascertained construction of a service station would necessitate subordination of the land ownership to a mortgage and a similar situation would exist as to a restaurant. For this reason the area as shown by a plat attached as an exhibit to the lease was designated parcel A–1 (service station), parcel A–2 (restaurant) and parcel B (balance of tract). The lease on the service station area (parcel A–1) was by separate instrument and does not concern us here.

The above facts were stipulated. These parties further stipulated the parcel A–2 and parcel B ground lease original draft was prepared by lessee's attorneys, submitted to lessor's counsel, and after several drafts ensued the final draft was executed October 31, 1967.

Thereafter the service station was constructed on parcel A–1 and the restaurant on parcel A–2. Parcel B remained undeveloped until the fall of 1971.

The "Ground Lease" was for a 20 year term with options to renew for three successive five year terms. Particularly pertinent here is part "II, RENTAL." Paragraph A thereof provides for monthly rental of $150 "commencing with the completion of the construction of a restaurant building on the premises." Paragraph B states,

"B. In addition to the foregoing rental, Lessee will pay additional rental determined as follows:

1. In the event a building is constructed for a restaurant, specialty food and gift sales, 2% of gross sales over $250,000.00 in each lease year * * *.

2. If a motel is erected, one half of the net ground rental received by Lessee, with the minimum rental to be no less than 5% of room revenues.

3. If additional tenancies are created, the net ground rental shall be divided equally between Lessor and Lessee.

4. In the event a sub-lessee should require a lease whose term would exceed the term of this lease plus its three five-year renewal options, Lessee may ask Lessor to grant a longer term for the ground to be occupied by said sublessee, and Lessor's consent thereto shall not be unreasonably withheld."

In the fall of 1971 discussions were had between these parties concerning development of parcel B. In an exchange of correspondence between attorneys for these litigants, lessee took the position its development of parcel B as a franchised campground would not constitute an "additional tenancy" and no additional rental would be due lessor. Lessor's attorney contended lessee, by making the improvement itself, should not be permitted to deprive lessor of the additional rent which would ensue if the tract were sublet to a third party for such purpose.

There followed a letter from lessee to lessor, enclosing an executed sub-lease of parcel B to Kamp Dakota of Oxford, Inc. The letter stated in part, "You are hereby advised that an additional tenancy covering Parcel B has been created between Capitol-Strauss, Inc. as lessor, and Kamp Dakota of Oxford, Inc. as Lessee." The sub-lease provided for rental of $100 per month plus 5% of the excess "in any lease year in which rentals from campers exceed $24,000.00 * * *."

About two weeks later lessor was notified by letter from lessee this sub-lease "ha[d] not materialized" and lessee had decided to develop the proposed campgrounds by itself. According to the stipulation dictated into the record by the parties and the testimony of S. W. Strauss, one of the corporate owners of the lessee, Kamp Dakota of Oxford, Inc. was never formed. No corporate papers were signed. Two sons of S. W. Strauss signed the sub-lease as officers for Kamp Dakota of Oxford, Inc.

Lessor's petition in equity prayed for injunction to prevent construction of campground, for a construction of the lease declaring lessee's obligation to pay rent and the amount thereof, for expenses, costs and attorney fees as provided by lease, and for general equitable relief.

When trial commenced these parties stipulated, among other things, "[T]he sole question involved * * * was as to whether or not the development by the defendant of Parcel B as a campground constitutes an additional tenancy for which rent is payable under the provisions of the lease."

Trial court, confining itself to the sole stipulated issue, held defendant's use of parcel B as a commercial campground did not constitute the creation of an additional tenancy within the meaning of sub-paragraph 3 of paragraph B of part II of the ground lease. Claimed error in this holding constitutes lessor's sole ground for appeal.

I. Several rules relating to contracts mandate the result we must reach in this case.

The court will not resort to rules of construction where intent of the parties is expressed in clear and unambiguous language. Gendler Stone Products Co. v. Laub, 179 N.W.2d 628 (Iowa 1970); see rule 344(f)(14), Rules of Civil Procedure. In the absence of relevant extrinsic evidence, it is our duty, in interpreting a con-

tract, to give effect to the language of the entire contract in accordance with its commonly accepted and ordinary meaning, and not make a new contract for the parties by arbitrary judicial construction. State v. Starzinger, 179 N.W.2d 761 (Iowa 1970).

The rule the contract is to be construed against the party who drafts or furnishes the instrument applies only where the contract is ambiguous, vague or unclear. See Modern Heat & Power Company v. Paul, 261 Iowa 1319, 158 N.W.2d 8 (1968). That rule is likewise inapplicable where the instrument is prepared with the aid and approval, and under scrutiny of legal counsel for both of the contracting parties. Beck v. F. W. Woolworth Co., 111 F.Supp. 824 (N.D.Iowa 1953).

II. These parties, dealing at arm's length and both represented by competent counsel, executed a written contract in which parcels A–2 and B were leased to lessee for a rental of $150 per month and further rental payments if the restaurant attained a specified gross. Additional rent ("net ground rent") was dependent on the happening of either of two contingencies: If a motel was erected or if additional tenancies were created.

There was no restriction on the use to which the lessee could put the premises, except to the extent lessor was to approve design and location of the improvements, which on termination of the lease, became lessor's property.

We might surmise from the meager record before us that neither party at time of contracting foresaw lessee would use parcel B for a campground. Lessee claimed this investment was later and reluctantly considered only to meet competition across the interchange road. Lessee asserts lessor will ultimately benefit by an increase in his percentage of gross service station and restaurant sales.

Lessor does not ask us to reform the contract so that it might reflect an unexpressed intention of the parties at the time it was executed, or for any other reason. It may be, in retrospect, lessor exercised bad judgment in leasing without limit as to use by the primary tenant, but that cannot justify our meddling in a transaction which is clearly and unambiguously expressed in the contract.

It is clear lessee's *use* of the premises per se did not constitute an "additional tenancy": lessee already had a tenancy which did not prohibit this use.

III. Nor do we believe the abandoned sub-lease is determinative. Lessor argues this was an admission that additional rent was due. Lessee contends it was in reality a compromise offer to buy peace so it might pursue the campground development without controversy. We do not consider the admission, if any, to be fatal. We observe no one contends the sub-lease was actually effectuated, created an "additional tenancy," or generated any ground rent.

IV. But lessor asserts a campground operation will create "additional tenancies" or at least will result in "net ground rental." We doubt this issue is before us under the severely constrained pre-trial stipulation of these parties. This interpretation is further supported by failure of both parties to introduce any evidence relating to the proposed mode of campground operation or of facts which might bear on the legal relationship of the lessee and the future "campers." Both now ask us, in effect, to take judicial notice of what these facts will be, each contending for a different holding. Neither presents legal precedent directly in point.

The question whether additional tenancies will be created, or net ground rents received, by the future operation of the campground necessarily must await legal determination when that issue is properly submitted to a court upon a specific fact situation then existing. See Flynn v.

Michigan-Wisconsin Pipeline Company, 161 N.W.2d 56 (Iowa 1968); Fort Dodge, D. M. & S. Ry. v. American Community Stores Corp., 256 Iowa 1344, 131 N.W.2d 515 (1964).

Affirmed.