Thompson, J.
 

 It is well known that there are no slums in Iowa. Yet it must be admitted that the property with which we are concerned in the instant case, if located elsewhere, would not have been entirely out of place in such a district. Its legal description is Lot 2, Block 18, East Sioux City, Sioux City, Iowa. It was improved — if we may so use the term — by two one and onerhalf story one-family dwelling houses and another structure which was divided into four apartments.
 

 One of the defendant’s witnesses described the houses in these terms: “* * * they were in secondary condition, lack of paint and I think at that time, probably some of the windows were broken. * * * The property had grown up to weeds and generally in a poor state of repair. It was hard to distinguish the color of the buildings because of lack of paint on the outside. * * * They had stools, no bath facilities, no central heating plant that I discovered and were in generally poor condition on the inside.”
 

 Another witness said: “One of the smaller houses was vacant. There wasn’t any basement, what they term a basement. There was a small hole in there. * * * The physical condition was very bad. Debris scattered all over and broken windows. It was not habitable in its condition. The other one of the smaller houses was occupied by an Indian lady and was in exactly the same shape as the other small house — bad condition.”
 

 As to the multiple dwelling property, the same witness testified: “In the ones upstairs there was one stool that was used for both units. Downstairs they had separate ones and had kitchen sinks. This building was empty with a lot of broken windows. One of the doors was hanging from a part of a hinge and apparently it had not been occupied for many months.”
 

 
 *41
 
 The entire lot, including all of the dwellings, was condemned by the defendant for highway purposes, so that the measure of damages was its reasonable market value immediately before the taking. The condemnation commission awarded the plaintiffs $4350. Upon appeal the case was tried to the court without a jury, with a resulting judgment for the plaintiffs' of $7600. They were still dissatisfied, and have brought the matter to this court. Two errors are assigned:
 

 1. “The amount awarded is grossly out of proportion to the value as shown by the evidence.”
 

 2. “The Court erred in refusing to take into consideration the prospective commercial and industrial value of the property by reason of its proximity to the Missouri River Navigation Docks or because of its location in a heavy industrial area.”
 

 I. It is apparently the plaintiffs’ thought that the value placed upon the property by the trial court is so grossly inadequate that we should intervene. The court, trying the case without a jury, sat as the trier of the facts as well as of the law. No authority need be cited for the proposition that its findings have the effect of a special verdict and if supported by any substantial evidence are binding upon this court on appeal in the same manner a jury verdict would be. In the light of this rule, we are unable to find merit in the plaintiffs’ first assignment of error.
 

 Plaintiff Peter Kaperonis, who managed the real estate for himself and the other members of his family, was the only value witness for the appellants. He said the property was worth $25,000 at the time of the taking. Four expert witnesses for the defendant placed its value at $4250, $4100, $4750, and $3850 respectively. In the face of this testimony it is clear we cannot say the finding of the trial court was so apparently and grossly wrong that substantial justice has not been done.
 

 So far as we can follow the plaintiffs’ argument at this point, it seems to be their principal contention that the rental or income return from the property was so high that injustice is apparent, and the defendant’s witnesses failed to give this factor sufficient consideration. Peter Kaperonis testified that the net income from rentals for 1954, 1955 and 1956 was $1024.86. He arrived at this figure by taking the gross rentals of $1434.25
 
 *42
 
 per year and deducting taxes of $294.51 and “upkeep and all other expenses” of $144.88, each per year. It is then urged that the court’s allowance of $7600 cannot be made to return any such sum as the amount above set forth as the net income from rentals. It is only necessary to observe that we are not advised what the “upkeep and all other expenses” comprise. Pictures introduced into the record show an advanced stage of deterioration of the houses. “Upkeep” seems from all the evidence to have been a name rather than a fact; something chiefly noteworthy for its absence. Another element bearing upon the rental situation is furnished by Peter Kaperonis himself. He said: “I have been diligent in collecting rents on all the properties but the tenants sometimes stay a month or a month and a half before they are evicted for nonpayment of rent. They are delinquent most of the time, but I collect the rent personally.”
 

 Revenue arising from the use of land is a proper consideration to be talien into account in determining its value, but it is not the sole or conclusive factor. Korf v. Fleming, 239 Iowa 501, 520, 32 N.W.2d 85, 96, 3 A. L. R. 2d 270. At least three of the four witnesses for the defendant testified that they considered the rental situation in fixing their estimates of value. The plaintiffs would have us make income the sole test. This we cannot do. We find no basis for a holding that the amount allowed by the trial court was so low that substantial justice was not done. It was considerably in excess of the values fixed by the four expert witnesses who testified.
 

 II. The plaintiffs think that their property had special value because it is located in an area which is zoned for heavy industry, and because it is about three blocks from the Missouri River docks. There is some evidence that barge traffic on the river may develop; in fact, that there is some of such traffic already moving. But it proceeds under some difficulties, and needs further development of the river.
 

 Mr. John C. Kelly, publisher of the Sioux City Journal-Tribune, a member of the Sioux City Dock Commission, of the Chamber of Commerce, and an interested businessman, testified that there are barge lines authorized to carry freight to Sioux City, and that at least one-half dozen barges carrying commercial freight came to Sioux City prior to August 8, 1958. But he
 
 *43
 
 also said: “The channel is rather limited in depths between Sioux City and Omaha. The deepening of the Missouri River channel depends a great deal upon money provided by Congress for navigation. There are two spots on the river where the depth is
 
 4Yz
 
 feet while 6 feet is considered good navigation and 9 feet is considered the best.”
 

 It also appeared that while plaintiffs’ property was in a heavy industrial zone and there are some commercial buildings in the area, only one new commercial structure has been erected there in the past ten years. In view of these facts as to the location of the property approximately three blocks from the docks, of the uncertain prospect for shipping activity on the Missouri River in the foreseeable future, and of the past slow industrial development of the area, the trial court found:
 

 “That the said property condemned by the defendant does not have a special value attributable to its location with relation to the Municipal Dock of the City of Sioux City, Iowa. This Court cannot enter the realm of speculation in considering future uses; that the said property being located as it is in area zoned Heavy Industrial, has no special additional value for industrial use, based upon the evidence presented at the trial, it not being established that there has been any significant expansion of industry in the area, nor a reasonable probability of such in the future to such an extent that may be taken into consideration by the Court in determining damages; * *
 

 The plaintiffs construe this as an entire refusal of the court to consider the question of potential value through possible future use of the property for commercial purposes because of its proximity to the docks and of its heavy industrial zoning status; and they say the court erred in so refusing. They cite Hall v. West Des Moines, 245 Iowa 458, 468, 62 N.W.2d 734, 740; Nedrow v. Michigan-Wisconsin Pipe Line Co., 245 Iowa 763, 61 N.W.2d 687; and 18 Am. Jur., Eminent Domain, section 244, page 879. The true rule is expressed in the Hall case, supra: “We think the question of adaptability for industrial uses * * * as an element of value to be taken into consideration was a proper one to be submitted as the trial court did.”
 

 This means only that the matter was properly placed before the trier of the facts, for it to make such decision as its
 
 *44
 
 best judgment warranted. It does not mean that, because tbe question was submitted to the jury, it was bound to decide that there was adaptability for industrial use, or if it so found that such use was so reasonably probable as to enhance the value. The proper submission of an issue to a jury generally means that there is a fact question to be determined, and that the jury may decide it either way. Here, the court was the jury in the sense that it was the trier of the facts. It considered the adaptability of the plaintiffs’ condemned property for industrial use, and also its location with relation to the docks. But it found the possibility of use for industrial purposes or because of the expansion of river traffic to be so remote and speculative that the value of the property was not affected thereby. Such a finding was within the proper province of the fact finder; it has substantial support in the evidence, and we cannot interfere. We find no error in the judgment of the trial court. — Affirmed.
 

 All Justices concur.