**TWIN–STATE ENGINEERING & CHEMICAL COMPANY, a Corporation, Appellee,**

v.

**IOWA STATE HIGHWAY COMMISSION and the State of Iowa, Appellants.**

No. 54896.

Supreme Court of Iowa.

May 11, 1972.

Shaff, Farwell & Seneff, Clinton, for appellants.

Lane & Waterman, Davenport, for appellee.

MASON, Justice.

This is an appeal by the condemnor, Iowa State Highway Commission, from a partial condemnation award of $9000 for the taking of approximately 0.1 acre of land subject to plaintiff's lease and the taking of the right to direct access to and from Primary Road No. U.S. 61. It presents for determination correctness of the court's rulings on objections to plaintiff's evidence relative to the loss of business profits and correctness of the court's instruction defining the extent of the jury's consideration of such profits in arriving at the fair and reasonable market value of plaintiff's leasehold interest.

We recount the facts leading up to this lawsuit.

Plaintiff-corporation, Twin-State Engineering & Chemical Company, is engaged in the business of distributing herbicides and insecticides for rural cropping and also manufactures liquid fertilizer materials. From 1959 until 1968, plaintiff operated a facility in downtown DeWitt consisting of tank storage facilities and a warehouse for storage of chemicals. In the fall of 1967, negotiations were entered into by plaintiff and Harry Barber for the lease of approximately one acre of ground on highway 61 north of DeWitt for the purpose of constructing a new facility. October 9, 1967, an application was made to the Iowa State Highway Commission for access to the property covered by the lease, and the access was approved by the highway commission November 8.

A lease dated January 1, 1968, and acknowledged by the Barbers February 3 and acknowledged by plaintiff February 8 was entered into for the lease of approximately one acre of ground on the west side of

highway 61 at the annual rental to Mr. Barber of $400 per year. The lease was for a term of ten years with two five-year options. In February and March of 1968, a sixteen by thirty-two foot warehouse building of frame construction with a concrete floor was constructed on the leased ground. Plaintiff also put in the culvert and had installed part of the gravel for the access road.

Plaintiff received verbal notice in March and written notice in April 1968 that approximately one-tenth of an acre along the entire frontage of its leasehold and its rights of direct access to and from U.S. Highway No. 61 were being condemned by the highway commission. Plaintiff then stopped construction. July 9 a condemnation commission filed its report assessing plaintiff's damages at $400.

At the time of the condemnation, plaintiff was continuing to operate its business at its facility in downtown DeWitt and had not commenced operating business at its new leasehold site.

After being notified of the appraisement of damages made, plaintiff perfected its appeal to the Clinton district court and filed petition seeking $85,000 as damages. Trial by jury followed and plaintiff's damages were ascertained at $9000.

Defendant relies on five assignments of error for reversal. The first four are based on adverse rulings on admissibility of plaintiff's evidence as to loss of profits and instruction 6 relating to the permissible use of this evidence by the jury in determining the measure of damages. These assignments are argued in one division in defendant's written brief. The fifth assignment argued in a separate division, is predicated on the contention the verdict is excessive.

I. As previously indicated, the principal controversy in this lawsuit involves the matter of what evidence is properly admissible in the determination of just compensation for plaintiff's loss by public taking.

Two of plaintiff's witnesses, one of whom was Robert Hovey Tinsman, Jr., president of plaintiff-corporation, were allowed to testify over objection as to their estimation of net profits lost to the plaintiff as a result of the condemnation. It at all times has been plaintiff's position such evidence is admissible not as an independent element of damage but as bearing on determination of the fair and reasonable market value of plaintiff's leasehold interest. Defendant maintains consideration of such evidence is improper.

■ It is well settled a lessee is entitled to an award of just compensation for the public taking of his leasehold interest absent terms to the contrary on the lease agreement. Korf v. Fleming, 239 Iowa 501, 516, 32 N.W.2d 85, 94; Hawbaker v. Iowa State Hgwy. Comm., 253 Iowa 573, 577, 113 N.W.2d 296, 298; Comstock v. Iowa State Hgwy. Comm., 254 Iowa 1301, 1317, 121 N.W.2d 205, 215; State v. Starzinger, 179 N.W.2d 761, 765 (Iowa 1970); Nidy & Company v. State, 189 N.W.2d 583, 584 (Iowa 1971), and authorities cited in these opinions. The leasehold interest is legitimate "property" for which a taking is to be compensated. Iowa Constitution, Article I, section 18; R. & R. Welding Supply Co. v. Des Moines, 256 Iowa 973, 976, 129 N.W.2d 666, 668; State v. Starzinger, 179 N.W.2d at 765.

■ It is further agreed a taking by destruction of access is compensable. Re Condemnation of Land (Johnson County), 256 Iowa 43, 52, 126 N.W.2d 311, 316; Ft. Dodge, D.M. & So. v. American Etc. Corp., 256 Iowa 1344, 1354, 131 N.W.2d 515, 522; Jones v. Iowa State Highway Comm., 259 Iowa 616, 623, 144 N.W.2d 277, 281, appeal after remand, 157 N.W.2d 86; Skaff v. Sioux City, 168 N.W.2d 789, 793 (Iowa 1969), and authorities cited in these cases.

■ Where less than the entire tract is taken, just compensation is generally based on the difference between reasonable mar-

ket value of the entire tract and of the remaining portion after the taking. Nedrow v. Michigan-Wisconsin Pipe Line Co., 245 Iowa 763, 769, 61 N.W.2d 687, 690; Jones v. Iowa State Highway Comm., 259 Iowa at 621–622, 144 N.W.2d at 280; Townsend v. Mid-America Pipeline Company, 168 N.W.2d 30, 33, (Iowa 1969); Bellew v. Iowa State Highway Commission, 171 N.W.2d 284, 289 (Iowa 1969); Powers v. City of Dubuque, 176 N.W.2d 135, 138 (Iowa 1970); Van Horn v. Iowa Public Service Company, 182 N.W.2d 365, 370–371 (Iowa 1970); Note, Contemporary Studies Project: New Perspectives on Iowa Eminent Domain, 54 Iowa L.Rev. 737, 843.

■ Where condemnation of a fee interest is sought, generally evidence of business profits is inadmissible as an independant element of damage or as relevant in determining the value of the land because it is too uncertain and depends upon too many contingencies. Wilson v. Iowa State Highway Comm., 249 Iowa 994, 1006, 90 N.W.2d 161, 169; Comstock v. Iowa State Hgwy. Comm., 254 Iowa at 1309, 121 N.W.2d at 210; Broadcasting Corp. v. State Highway Comm., 256 Iowa 1251, 1256, 130 N.W.2d 707, 710; Note, supra, 54 Iowa L. Rev. at 849. See also 5 Nichols on Eminent Domain, Third Ed., section 19.3; Lewis on Eminent Domain, Third Ed., section 727; 27 Am.Jur.2d, Eminent Domain, section 431; 29A C.J.S. Eminent Domain § 154.

In this regard, it is stated in 1 Orgel on Valuation Under Eminent Domain, Second Ed., section 162, pages 661, 662:

"The fundamental reason for the exclusion of evidence of profits lies in the rule of substantive law that the condemnor takes only the real property, not the business located thereon. * * *

" * * *

" * * * [The] courts have generally stated that business profits are the result of so many factors and that their repercussion on the market is so remote, that the evidence is more likely to mislead than to aid in the determination of market value. * * *."

It is plaintiff's position that the principles of law stated in the cases cited by defendant, Wilson v. Iowa State Highway Comm., 249 Iowa 994, 90 N.W.2d 161, 169; Comstock v. Iowa State Hgwy. Comm., 254 Iowa 1301, 121 N.W.2d 205; and Broadcasting Corp. v. State Highway Comm., 256 Iowa 1251, 130 N.W.2d 707, do not apply to its leasehold situation.

It must be conceded that Wilson and Broadcasting Corp. involve condemnation of the fee interest rather than a leasehold. Comstock, although dealing with a leasehold, was not concerned with profits from the ordinary use of property, cultivation or occupancy, but with condemnation of a leasehold providing for the removal and depletion of the physical property leased, removal of gravel—a part of the intrinsic nature of the land itself. See 27 Am.Jur. 2d, Eminent Domain, section 431.

Although the court in Nidy & Company v. State, 189 N.W.2d at 585, was speaking relative to the 1959 amendment to what is now section 472.14, The Code, this statement in the opinion is appropriate for consideration in arriving at the answer to the question stated in the first sentence of this division:

" * * * We have often stated generally the purpose and intent of eminent domain laws are to secure a person from loss due to a taking of his property for public use, and have said he is to be made 'whole,' as nearly as possible, by way of adequate compensation for his loss. * * *."

Perhaps with this purpose in mind this court in Interstate Finance Corp. v. Iowa City, 260 Iowa 270, 274, 149 N.W.2d 308, 311, in discussing the measure of damages for condemnation of a leasehold interest, said:

"The measure of damages for a leasehold interest taken under eminent domain

is declared generally to be the fair market value of the leasehold or unexpired term of the lease. 27 Am.Jur.2d, Eminent Domain, section 352. We have held the measure of damages for a leasehold interest taken under eminent domain is the market value of the unexpired term of the lease over and above the rent stipulated to be paid. * * * [citing authorities]."

Interstate Finance and Comstock both quote at length from Korf v. Fleming, 239 Iowa 501, 32 N.W.2d 85, 3 A.L.R.2d 270, cited and relied on by plaintiff.

We also quote from the Korf opinion, 239 Iowa at 517–519, 32 N.W.2d at 94–95, 3 A.L.R.2d 270, but not necessarily the same parts as in Interstate and Comstock:

" 'It is usually assumed that this market value is equal to the excess of the rental value over the rent reserved.' * * *

"Where the whole property is taken and the leasehold is destroyed the measure of damage has been variously stated as the rental value over the rent reserved. * * * [citing authorities]

"The same rule applies in the condemnation of a right of way over leased premises and only a part of the leasehold is taken. * * *[citing authorities]

" * * *

" 'Ordinarily, market value is the criterion, but in certain cases it is not the true standard by which to determine the value. * * * This is particularly true as applied to a leasehold. Value must be determined by a consideration of the uses to which the property is adapted. All circumstances naturally affecting this value are open to consideration.'

" * * *

" ' * * * It would seem that a lease might well be held to fall within the class of property not commonly bought or sold, and that consequently the intrinsic value, or the value to the owner, might be taken as the best and only available test of market value.' " In accord, see Comstock v. Iowa State Hgwy. Comm., 254 Iowa at 1313–1314, 121 N.W.2d at 213.

More importantly, the court in Korf went on to comment:

" 'Although the interest taken in this case is only a leasehold * * * the same rule applies, viz., the market value of the thing taken. * * * In awarding compensation to a lessee, * * * the market value of the unexpired term should be allowed, taking into consideration as elements of value the situation, condition, and use made, or that may be made, of the premises, and the nature and prosperity of the business carried on there, if it affects the value of the lease.' [Loc. cit. 239 Iowa at 518, 32 N.W.2d at 95.]

" * * *

"Defendants argue that estimated profits must not be considered. We have no quarrel with this rule. Here the estimated profits were not in the distant future but were almost in the present and based upon existing conditions and farm returns of the past two years. * * * [citing authorities]

"[While profits lost] are not recoverable by way of damages, [yet] evidence that the business was profitable is admissible to illustrate and throw light upon the value of the premises for rent." [Loc. cit. 239 Iowa at 520, 32 N.W.2d at 96.]

Returning to Interstate Finance Corp. v. Iowa City, 260 Iowa at 275, 149 N.W.2d at 312, we find this statement:

"In the above cited cases [Korf v. Fleming and Des Moines Wet Wash Laundry v. Des Moines, 197 Iowa 1082, 198 N.W. 486, 34 A.L.R. 1517] we recognize a variety of elements of loss, expense and inconvenience may be considered by the jury, not as substantive elements of damages, but as descriptive of the injury resulting to the leaseholder by the condemnation. * * *."

Korf, Des Moines Wet Wash Laundry and Interstate Finance involved condemnation of a leasehold as opposed to a fee. In

Interstate Finance two plaintiff-witnesses testified they considered loss of business as an element in arriving at their opinion of the fair and reasonable market value of plaintiff's lease. Another witness said he considered business interruption damages to the plaintiff's business while waiting to get into a new location in determining market value of the leasehold.

Defendant's motions to strike the testimony given by these witnesses were overruled and the jury was told in instruction 16 that: "In arriving at your verdict, you should give no consideration to the loss to plaintiff, if any, occasioned by the temporary interruption of its business or business volume by virtue of the condemnation by the defendant, except as it affects the fair and reasonable market value of its leasehold interest as a whole. It cannot be considered as a special damage." Loc. cit. 260 Iowa at 276, 149 N.W.2d at 312–313.

In affirming the case we found no reversible error in not striking the testimony of the three witnesses referred to in light of the instruction quoted above.

Kaperonis v. Iowa State Highway Comm., 251 Iowa 39, 99 N.W.2d 284, involved condemnation of a fee interest in a tract of land as well as rental dwellings located thereon. In seeking reversal of the trial court's award of damages, plaintiffs argued the rental or income from the property was so high the damages awarded for condemnation were grossly inadequate. This court noted in the course of the opinion plaintiffs would have us make income the *sole* test in determining value. This we refused to do, saying, "revenue arising from the use of land is a proper consideration to be taken into account in determining its value, but is not the sole or conclusive factor. * * *." Loc. cit. 251 Iowa at 42, 99 N.W.2d at 286. This statement in Comstock v. Iowa State Hgwy. Comm., 254 Iowa at 1308, 121 N.W.2d at 209, is to the same effect: "Anticipated profits have too many variables including managerial skill to be the *sole* basis for fixing value,

but the hope for gain is a motivating element in the purchase of commercial property." (emphasis supplied)

In order to assure just compensation to the condemnee, evidence descriptive of the injury resulting to the leaseholder by condemnation should be considered in determining the fair and reasonable value of the lease interest. Interstate Finance Corp. v. Iowa City, supra.

To that end we hold that in determining compensation to the owner of a leasehold for the taking of his interest in condemnation proceedings, evidence relevant to the prosperity of the business conducted by him on the lease premises is admissible, not as an independent element of damages but as a proper item to be considered in determining the fair and reasonable market or intrinsic value of his leasehold.

II. In the light of the foregoing principle we turn to examination of the record to consider defendant's attack on the court's ruling on objections to plaintiff's evidence.

Mr. Tinsman testified as to the corporation's effort to keep abreast of competition in the area and in detail as to matters taken into consideration in selecting the leased site. He described the importance of a convenient access to the property for both walk-in trade and movement of large trucks transporting raw materials that go into the manufacture of the finished product.

The original lease agreement between plaintiff and the Barbers had this provision:

"It is understood that Lessee has arranged for access to U.S. Route No. 61, at Lessee's expense, by agreement with the Iowa Department of Highways. In the event this access is disturbed or removed for any reason during the period of this Lease, including any extensions, Lessor agrees to allow Lessee to use the existing access road for access purposes."

Tinsman also pointed out several reasons why the access to the Barber property approximately 300 feet away, referred to in the quoted provision of the lease, was not satisfactory for the operation on the leased site.

Tinsman said the company had planned to discontinue business at its downtown location after the new site was made operational for the 1968 spring business but it was unable to do so because of the loss of the access previously granted. It thus became necessary to keep the DeWitt installation open during the 1968 season.

December 13, 1968 plaintiff entered into a new lease with Barbers for the lease of one acre of ground on the east side of highway No. 61 directly across from the site originally leased. The new lease was for the same amount of ground, approximately one acre, was for the same amount of rental, $400, and was for the same duration, 20 years including renewal options.

The same building that plaintiff had constructed on the west side of the highway was moved to the new site on the east side.

Plaintiff had started to move to its new facilities on the east side in the fall of 1968 and was ready to commence business for the 1969 spring season. Thus, plaintiff's evidence confined its damages to only one year, 1968.

When Tinsman was asked the value of the leasehold to plaintiff before condemnation of the access, defendant objected for the reason "that no foundation has been laid for the testimony; calls for the opinion and conclusion of the witness; it is too speculative and remote; items that are being considered here that are not compensatory items of damage." The objection was overruled and Tinsman testified the value prior to condemnation would have been $8854 on an annual basis over the length of the time of the lease. He was then asked his opinion as to the value of the leasehold after the access had been

condemned. He answered it "was not worth anything to us."

■ The first two grounds of defendant's objection present nothing for review under this record. Reversible error may not be predicated upon a general objection that no proper foundation has been laid for admission of evidence. A party objecting to the offer of evidence for this reason must point out in what particular or particulars the foundation is deficient so the adversary may have opportunity to remedy the alleged defect, if possible. See State v. Entsminger, 160 N.W.2d 480, 482–483 (Iowa 1968).

■ The objection to the question as calling for an opinion and conclusion of the witness is essentially worthless standing alone as it fails to call the trial court's attention to any specific ground for objection. Opinion and conclusion evidence is not inadmissible solely on that ground. Some specific reason for its exclusion must be stated. It is the duty of counsel to point out the particular defect or defects. Bengford v. Carlem Corporation, 156 N. W.2d 855, 865 (Iowa 1968).

The basis for the contention that items being considered were not compensatory in nature stems from Tinsman's earlier direct examination.

Tinsman had been asked what the value to plaintiff-corporation would have been had it been able to operate at the leasehold site during 1968 as originally anticipated. At this point defendant objected that "no foundation laid for this testimony; it is calling for an opinion and conclusion of this witness for which there is nothing in the record to justify; irrelevant and immaterial." The objection was overruled.

The witness answered that during 1968 the corporation lost $8854. When asked to explain how he arrived at that figure, Tinsman gave the figures for the volume of sales for 1967 at the DeWitt store. He also gave the volume of sales at this same location for 1968, pointing out there had

been an increase in volume over 1967 which he attributed to normal growth. Tinsman then gave the volume of sales for 1969 at the new leased site, noting again there had been an increase over the 1968 sales at the downtown location. Tinsman accounted for this increase as due to normal growth and location of the business.

By process of calculation he arrived at a figure of $8854 which he said represented the loss sustained by the corporation by reason of its inability to operate at the original leased site.

Of course, what we have said earlier applies to the first two grounds urged in this objection.

The grounds that the evidence is irrelevant and immaterial remain.

A great deal of Tinsman's cross-examination was devoted to plaintiff's contention the loss of the access destroyed the value of the leasehold for its purposes. However, during this stage of his examination, Tinsman was asked the value of the leasehold before condemnation which he again opined was $8854 which he testified was the amount of plaintiff's damages plus moving expenses.

Mitchell White, an economic analyst for Hawkeye Chemical Company of Clinton, testified as plaintiff's witness. He detailed his formal educational background and his actual experience in evaluating dealer locations for fertilizer operations similar to that conducted by plaintiff. There is no question as to his qualifications as a witness in this respect. White was acquainted with plaintiff's original leasehold site and the general type of location sought by competitive chemical companies in the area.

Mr. White expressed the opinion without the access originally granted by the highway commission, the site would not be considered suitable for a liquid fertilizer operation; use of the Barber access would not be satisfactory for such operation.

White was asked on direct examination whether he considered plaintiff's loss of profits as realistic and reasonable when based on the volume of sales given by Tinsman. He testified without objection that the loss of profits was reasonable. When asked for his opinion as to the value of plaintiff's leasehold after the access was condemned, defendant renewed its objection stating the same grounds previously urged which are set out, supra. The objection was overruled and the witness testified that the loss was $8854, the value of the lease before condemnation and zero after loss of the access.

Admissibility of Tinsman's and White's testimony must be determined in the light of the limited grounds urged against admission of their testimony by defendant which we have indicated were properly preserved at trial for review in this court since no others will be considered.

■ Although evidence relative to plaintiff's loss of profits for 1968 was not admissible as an independent element of damages for the reasons thus urged by defendant, we conclude such evidence as to the nature and prosperity of plaintiff's business was a proper item to be considered along with all facts, circumstances and elements disclosed by the evidence as tending to establish the reasonable value of the lease at the time it was taken. The evidence tended to be descriptive of the injury resulting to the leasehold by condemnation.

The court limited the jury's consideration of evidence bearing on plaintiff's loss of profits except as such evidence affected the fair and reasonable value of the leasehold as a whole. Any consideration of such item as a separate dollar and cent allowance was eliminated. See Interstate Finance Corp. v. Iowa City, 260 Iowa at 274, 149 N.W.2d at 311.

Defendant's belated objection urged for the first time at the close of plaintiff's evidence that Tinsman's testimony should be excluded as not the best evidence presents nothing for review. For a recent discussion of the best evidence rule see U.S.

Homes, Inc. v. Yates, 174 N.W.2d 402, 403–404 (Iowa 1970).

The trial court committed no error in overruling defendant's objections to the testimony of Tinsman and White.

III. Instruction 6, tailored to the evidence before the court, was substantially similar to instruction 12 in Interstate Finance Corp. It correctly submitted the proper measure of damages. When considered in its entirety it is not subject to defendant's attack. As to the effect a correct instruction has in rendering harmless and nonprejudicial testimony erroneously admitted see Interstate Finance Corp. v. Iowa City, 260 Iowa at 277, 149 N.W.2d at 313.

IV. Mr. Tinsman testified the taking of the one-tenth acre was not a problem in connection with its business because they had constructed the building 80 feet back from the road right of way. At trial the court sustained defendant's motion to strike paragraph 8(a) of plaintiff's petition in which claim was asserted for damages by reason of the reduction of the leasehold by 0.1 acre.

Plaintiff's contention it was denied reasonable free or convenient access to its property as a result of defendant's condemnation was submitted to the jury.

■ Defendant contends in its remaining assignment that the verdict of $9000 is excessive.

As bearing on defendant's contention this statement in Van Horn v. Iowa Public Service Company, 182 N.W.2d 365 at 372, is decisive:

"A condemnation case is one in which the amount allowed is peculiarly within the province of the trier of fact, and unless the same be shown to be so extravagant or penurious as to be wholly unfair and unreasonable this court has repeatedly refused to interfere with the award. Crozier v. Iowa-Illinois Gas & Electric Company, 165 N.W.2d 833, 835–836 (Iowa

1969) citing several of our own cases as authority.

"In determining the contention the award is so excessive as to shock the conscience or sense of justice a reviewing court must take the evidence in the aspect most favorable to condemnee which it reasonably bears. Townsend v. Mid-America Pipeline Company, 168 N.W.2d at 33. The same principle is expressed in Newland v. Linn County Board of Sup'rs, 256 Iowa 424, 430, 127 N.W.2d 625, 628–629 when this court pointed out that unless there is a radical situation with reference to the amount of damages allowed by the trier of fact in a condemnation case or unless the amount is such that it shocks the conscience of the court, the amount of the award is a question for the trier of fact and neither the trial court nor this court should interfere."

For a statement of the same principle in other words see Korf v. Fleming, 239 Iowa at 523, 32 N.W.2d at 97 and authorities cited in that opinion.

We do not find the award so large as to call for our interference.

Finding no error the case is

Affirmed.

All Justices concur, except UHLENHOPP and LeGRAND, JJ., who dissent, and McCORMICK, J., who takes no part.

UHLENHOPP, Justice (dissenting).

This is a hard case. On application in the fall of 1967, the Highway Commission granted access from the one-acre premises to the highway. Plaintiff thereupon leased and to some extent improved the premises. In the summer of 1968 the Highway Commission condemned the access to the highway, as well as the front one-tenth of the premises. With this ambivalence on the part of the Highway Commission, small wonder the jury made plaintiff a substantial award.

But the problem is more difficult for us. We are writing the law of eminent do-

main. Examination of the present proceedings shows the very thing happened that this court has warned against: lost profits (or contemplated profits) were *in fact* allowed.

A condemnor does not condemn a business; it condemns the property. The measure of compensation is thus not the value of the business or its profits, but the value of the property. 1 Orgel, Valuation Under Eminent Domain § 162 at 661–662 (2d ed.). If title to the fee is encumbered by a lease for a term, the compensation is the value of the encumbered fee and the value of the leasehold. In determining the value of the leasehold, evidence that a prosperous business is being conducted on the premises is relevant. But when the evidence goes farther—into detailed proof of profits and indeed into hypothetical profits of a business not yet on the premises—the jury is taken down the wrong road and into the realm of profits.

A couple illustrations demonstrate that these proceedings in fact resulted in an award of profits. Plaintiff asks compensation for only one year of the term although with extensions, the lease would run for 20 years. Plaintiff claims that the value of the lease for that one year, over and above the rent of $400, is $8,854. (The fact that plaintiff is asking compensation for one year and not for the balance of the term itself indicates that it is seeking the profits for the year rather than the value of the leasehold for the term.) Now suppose that a similar condemnee asks compensation for the full 20 years at $8,854 per year. Can it be thought that sum is really the value of such a leasehold in the vicinity and not in fact the profits of the contemplated enterprise, with all the personal services, managerial skills, and other factors which go into profits? If it be said that the law would require such a condemnee to minimize loss of profits by promptly seeking another site, is it not thereby admitted that the condemnee is in fact recovering profits?

Again, suppose plaintiff owned these premises in fee. Then if the condemnor took the entire acre, plaintiff would only be entitled to the value of such an acre with access. Since rent for business property is ordinarily capitalized at 10%, the value of this acre would appear to be about $4,000. If in contrast a lessee who plans to establish a business on the acre is allowed $8,854 for his right of possession for one year, must not such award in fact be based on contemplated profits of the business? Indeed, plaintiff's president testified that the figure $8,854 represents one-year's expected profits of his firm. In essence, plaintiff's demand here is in the nature of an estoppel or breach of contract action for unrealized expectations in the form of profits, for the Highway Commission's granting access and then taking it away. But this is not such an action; this is a proceeding in eminent domain, and in this proceeding plaintiff is not entitled to lost profits but to the value of such a leasehold in the community of DeWitt.

The fact of the matter is that the distinction between leasehold value and profits was extinguished here. But the distinction is real. It is one thing to require a lessee to show what a leasehold is worth in the vicinity, with a prosperous business located on the premises, and quite a different thing to permit a lessee to calculate his projected profits and then simply to characterize those profits as the value of the leasehold. To permit the latter is in fact to allow recovery of profits and to abolish the rule that profits do not constitute the measure. Condemnees will simply call profits by another name, and the rule against recovery of profits will be gone.

The established rule for valuing leaseholds should have been applied here in the evidence as well as in the instructions—the value of the leasehold based on consideration of the duration and provisions of the lease, the size, shape, location, accessibility, and terrain of the premises, the permanent improvements if any and their condition,

and the suitability of the premises for particular uses, including the use the lessee planned to make of them.

Plaintiff may have received inequitable treatment by the Highway Commission's ambivalence in granting and then taking away the right of access. But in an effort to remedy this, we should not set a precedent in eminent domain law which will cause difficulty later. The judgment should be reversed.

LeGRAND, J., joins in this dissent.