# IN THE COURT OF APPEALS OF IOWA

No. 16-0028
Filed March 8, 2017

**NDA FARMS, L.L.C. and CONNIE J. VEASMAN,**
    Plaintiffs-Appellees,

**vs.**

**CITY OF AMES, IOWA THROUGH THE AMES MUNICIPAL ELECTRIC SYSTEM,**
    Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Paul D. Scott, Judge.


        The City of Ames appeals a partial condemnation award compensating property owners for a thirty-three-foot-wide easement across their properties. **AFFIRMED.**


        Alexander M. Johnson and Philip E. Stoffregen of Brown, Winick, Graves, Gross, Baskerville & Schoenebaum, PLC, Des Moines, for appellant.

        Kimberly S. Bartosh of Whitfield & Eddy, P.L.C., Des Moines, for appellees.


        Heard by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

The City of Ames appeals a partial condemnation award compensating property owners for a thirty-three-foot-wide easement it obtained for the purpose of installing electric transmission lines. The City challenges several of the trial court's evidentiary rulings and the court's failure to instruct the jury on speculative damages. The City also argues the evidence does not support the jury's damage award.

### I. Background Facts and Proceedings.

In order to meet the demands of its residents, the City of Ames imports electrical power from a substation near Ankeny. The City applied for and received eminent domain power from the Iowa Utilities Board in order to run power lines from that substation to Ames. To this end, it sought a permanent thirty-three-foot-wide easement to run along Northeast 29th Street across the three contiguous properties at issue in this appeal: Parcel 2, owned by NDA Farms; Parcel 2A owned by Veasman; and Parcel 3, owned by NDA Farms.

The City offered NDA Farms $32,100 to compensate it for the easement across Parcels 2 and 3 and offered Veasman $12,600 to compensate her for the easement across Parcel 2A. The offers were based on a valuation of the land prepared by Dale Ahlsten of ProSource Technologies, LLC. NDA Farms and Veasman rejected the offers.

The City initiated a condemnation action, seeking the appointment of a compensation commission to assess the amount of damages NDA Farms and Veasman incurred as a result of the easement. The commission convened on January 9, 2014. The City presented the valuation prepared by ProSource

Technologies, LLC to the commission. The commission awarded $10,700 in damages for the easement over Parcels 2 and 3 to NDA Farms, $4200 in damages for the easement over Parcel 2A to Veasman, and costs of $1605.17.

NDA Farms and Veasman appealed the condemnation award to the district court, alleging they were entitled to no less than $300,000 in damages. Following a trial, a jury awarded a total of $290,000 in damages to NDA Farms and Veasman. The trial court entered judgment in favor of NDA Farms and Veasman in the amount of $290,000, and awarded attorney fees and costs. After its post-trial motions were denied, the City filed this appeal.

**II. Evidentiary Rulings.**

The City challenges several of the trial court's evidentiary rulings. We review these rulings for an abuse of discretion. *See Hall v. Jennie Edmundson Mem'l Hosp.*, 812 N.W.2d 681, 685 (Iowa 2012). An abuse of discretion occurs when the trial court's ruling is based on unreasonable or untenable grounds. *See Giza v. BNSF Ry. Co.*, 843 N.W.2d 713, 718 (Iowa 2014). Grounds for a ruling are untenable when they are based on an erroneous application of law. *See id.* We only reverse those evidentiary rulings that prejudice the complaining party. *See Whitley v. C.R. Pharmacy Serv., Inc.*, 816 N.W.2d 378, 385 (Iowa 2012).

**A. Evidence concerning the valuation used at the compensation commission hearing.**

Before trial, the parties agreed any evidence regarding the compensation commission's award was irrelevant and should be excluded from trial. However, the parties disagreed regarding the admissibility of the valuation performed by Dale Ahlsten of ProSource Technologies, LLC, and the City moved to exclude

such evidence. The court ruled that, although it would exclude any reference to the compensation commission's award, the plaintiffs could use Ahlsten's valuation and valuation method to impeach Brian Linnemeyer, a certified real estate appraiser the City designated as its expert witness.

During his cross-examination, Linnmeyer explained that he is self-employed and his income depends on having clients who are willing to pay for his services. He testified that less than five percent of his work comes from private individuals whose property is being taken by a government entity and approximately one half of his total work is reviewing appraisals conducted by others on behalf of government entities taking or acquiring private land. Linnemeyer testified that it is "somewhat rare" for him to disagree with a prior appraisal. The following exchange then occurred:

> Q. You are aware that there was a prior valuation on the Veasmans' property performed through the City of Ames by Dale Ahlsten with ProSource; correct?
> [The City's attorney]: Your Honor, I'm going to object at this time; relevance and lack of foundation and hearsay.
> The Court: It's overruled. Go ahead.
> Q. You were provided that valuation prior to conducting your appraisal of the Veasmans' property in this matter, weren't you? A. Yes. I believe it came up during the commission hearing, I believe, yes.
> Q. You're aware that Dale Ahlsten, an individual from ProSource who conducted this prior valuation, is not a licensed appraiser; correct? A. I am not aware of that, but I did hear it—I heard the valuation come up during the commission hearing. I guess I'm not aware of that.
> Q. Well, you attended the hearing you said? A. Yes.

The parties then held a discussion with the court outside of the jury's presence concerning the admissibility of the testimony regarding Ahlsten's valuation. After hearing counsels' arguments, the court stated:

So after listening to the testimony, . . . the Ahlsten valuation can be used to impeach this witness based on the fact that he reviewed it prior to making his value of determination and you can question him about that.

The fact that this witness talked about the commission is not—he is not opening that door, and I want to stay away from that. The valuation was prepared for the City of Ames and that's out. And that's, of course, going to be out. Your line of questioning about that—again, I say that the impeachment factor is appropriate, but that's it.

And, you know, you've effectively brought up the fact what he's done in the past. You've effectively brought up the fact that he looked at something, at another valuation. Now, the next step is not going to be about the commission. The next step is going to be—well, it's going to be whatever you want, but I assume it's going to be how you used this in your valuation.

I agree with [the City] that the commission's action is not relevant to what we are deciding here.

What this jury has to determine is whether or not this valuation of Olson—or excuse me, of Linnemeyer versus the valuation of Olson—or really anywhere from zero to whatever. So they are going to give whatever weight they want to to both of these.

You can cross-examine him on it, but I do not want to open this—I don't want to get in any deeper into this commission thing. I appreciate the fact that [the City's attorney] is not telling his client what to say and what not to say, but what I'm getting from this line of questioning—and this is why we've got to be careful—is that he didn't review it, that he heard about it at the commission hearing.

Now, you know, that's going to be something for rebuttal—not rebuttal, redirect. Aside from the fact that—you know, if he says he didn't review that independently, I think that ends the whole deal unless you can convince me otherwise.

When the cross-examination resumed, the plaintiffs' counsel continued to probe Linnmeyer about the Ahlsten valuation:

Q. Mr. Linnemeyer, were you aware that when Ms. Ahlsten conducted her valuation of the estimate of damages of the Veasman property, that she did not, in fact, visit the Veasmans' property at all?

[The City's attorney]: Objection, Your Honor; relevance, a lack of foundation, and hearsay.

The Court: Overruled. You can answer the question, sir.

A. I was not aware of that.

> Q. Were you aware that she didn't do any kind of a before and after valuation when putting together her damage estimate?
>
> [The City's attorney]: Your Honor, objection; lack of foundation, hearsay, and relevance.
>
> The Court: It's overruled. You may answer the question.
>
> Q. Were you aware that she did nothing to evaluate any diminishing value to the remaining land when she conducted her appraisal?
>
> [The City's attorney]: Objection; lack of foundation, hearsay, relevance.
>
> The Court: It's overruled. You can answer the question.
>
> A. I was not aware. I just simply saw the exhibits.

The City's objections to the remaining questions about Ahlsten's valuation methods were sustained.

On appeal, the City complains the trial court's ruling allowed the plaintiffs to discredit Linnemeyer using valuation information that was never presented to the jury while, at the same time, the City was prohibited from admitting evidence that an independent commission entered an award of damages similar to Ahlsten's valuation. The City also complains that the court's ruling prohibited it from mentioning that the plaintiffs presented no evidence at the compensation commission hearing. The City argues the trial court's rulings on this issue "undoubtedly led to jury confusion and influenced the decision by the jury to accept in its entirety" the plaintiffs' expert's valuation.

The trial court was within its discretion to allow the plaintiffs to cross-examine Linnmeyer regarding the Ahlsten valuation for the limited purpose of determining whether Linnmeyer was biased. In light of Linnemeyer's testimony that the majority of his work comes from government entities rather than private individuals and involves reviewing—and typically approving—the work of other appraisers, it was not untenable or unreasonable for the trial court to permit the

plaintiffs to cross-examine Linnmeyer about Ahlsten's valuation to the extent Linnmeyer relied on or approved it. Once Linnmeyer testified his knowledge of Ahlsten's valuation was limited to what he heard at the commission hearing, the court sustained the City's objections to that line of questioning.

The trial court never admitted into evidence the Ahlsten valuation itself. Linnmeyer never testified he relied on the Ahlsten valuation in making his own valuation. As the City states in its brief, "The jury heard questions about a person not testifying at trial, whom they were told prepared an evaluation—which they couldn't see—and were told she did it improperly." Under the circumstances, we do not find this vague information, elicited during relatively brief questioning, influenced the jury more than the valuations presented by each party's expert witness or in any way prejudiced the City. As a result, the trial court was not required to give a limiting instruction to cure any prejudicial effect.

**B. Evidence concerning alleged ethical infractions committed by the plaintiffs' expert witness.**

The City next alleges the trial court abused its discretion in ruling that evidence regarding a 1997 case brought by the Iowa Real Estate Appraiser Examining Board against Michael Olson, the plaintiffs' expert witness, was inadmissible. The trial court granted the plaintiffs motion to exclude any reference to the disciplinary action or the consent order entered as a result of the action, finding the consent order was not probative because Olson never admitted to any wrongdoing. The court also found the evidence was remote.

During the hearing on the motion in limine, the following record was made regarding the disciplinary action and the consent order that resulted from it:[1]

[PLAINTIFFS' COUNSEL]: I have not seen [the disciplinary] complaint, Your Honor, and I don't have a copy of it. It's my understanding that . . . [Olson] did an abbreviated format with respect to a report, and apparently at that time they interpreted the rule to mean you had to do a full-on report in certain situations. He did an abbreviated format. [The complaint had] nothing to do with the valuation he gave. That's my understanding. . . .

. . . .

Does that report say that he erroneously inflated values? I think that's [an] assumption and that's a fact that's not in evidence . . . .

. . . .

It seems to me [Olson] didn't really admit to guilt. If he didn't admit to guilt, I don't know how it—

THE COURT: It doesn't say anything in [the consent order] about what [Olson] did. It just says that they're entering into a settlement agreement, a consent order. . . . [The board has] jurisdiction; there's been a statement of charges; [Olson] has a right to a hearing; he's waiving that right; this order is going on his permanent record. Although it does say: The order and the statement of charges are public records available for inspection and copying . . . in accordance with Iowa Code chapter 22 [(2013)].

[THE CITY'S COUNSEL]: And, Judge, doesn't it say Mr. Olson was disciplined for failure to clearly and accurately set forth—

THE COURT: What paragraph are you on?

[THE CITY'S COUNSEL]: I'm just reading from the memo. You've got my only copy.

THE COURT: Okay. I don't think it says anything about what [Olson] violated. I think it just says that this complaint is attached to the consent order.

Is this [discussed in Olson's] deposition? What did he say?

[THE CITY'S COUNSEL]: I asked him about it in his deposition.

[PLAINTIFFS' COUNSEL]: [Olson] said that he did sign a consent [order]. He wishe[s] he hadn't . . . . The only issue was whether or not he used this abbreviated report as opposed to the full report. He thought it dealt with two or three appraisals. He couldn't remember exactly how many because it was nearly 20 years ago. He was never fined or suspended. He took some

---

[1] Although it appears a copy of the consent order was shared with the court at the hearing on the motion in limine, no copy appears in the record before us.

continuing ed.  He thought it was 15 hours.  Then he said . . . back when he started appraising, there was no licensing board, there was no regulation.  You were sort of an apprentice and became an appraiser.

    And he said several years after he had been practicing—and this is how they did it before the licensing board came into effect.  In '91 or '92 they established a licensing board and then started to put together these protocols and regulations.  And they've since now adopted the format that he was using then.  The rule didn't change.  It was just their interpretation of the rule.  That's his explanation of what occurred.

    [THE CITY'S COUNSEL]: Judge, I don't know.  I agree with you.  After reading [the consent order], I think I'm pulling that from the statement of charges.

    THE COURT: Yeah.  That's what I'm thinking, too.

    [THE CITY'S COUNSEL]: And I've researched other cases where he has testified and I don't know if someone may have found more detail on what the substance of the allegations were, but I would agree with you; there is nothing in [the consent order] that details it.

    THE COURT: Yeah.  The complaint itself is pretty nasty.  But in the consent order he doesn't admit to anything in here . . . so I don't think that comes in.

    So Roman numeral 1 of the plaintiffs' motion in limine is granted.

The trial court was within its discretion to exclude evidence relating to the 1997 disciplinary action.  Olson never admitted any wrongdoing in the consent order.  Nor does the consent order detail the reasons for the disciplinary action.  The record indicates that the reason for the disciplinary action was related to the format of the valuation report rather than Olson's method of valuing property.  On this record, the trial court's determination that the evidence lacks probative value is not unreasonable or untenable.

**C. Evidence concerning the tax-assessed value of the land.**

Finally, the City argues the trial court abused its discretion in refusing to admit evidence regarding the Polk County Assessor's tax-assessed valuation of the plaintiffs' property.  The plaintiffs moved to exclude this evidence, and the

court granted the motion after determining the assessor's valuation was "not probative based on the method used to determine the assessed value for agricultural land."

The City argues the assessor's valuation is relevant because it "makes the existence of the damage determination by Ames' expert more probable because it supports a valuation more closely aligned with Ames' evidence." The question, however, is not whether the evidence can be construed to support a party's argument. Rather, the test for relevancy is whether the evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 5.401.

The fact of consequence is the value of the plaintiffs' land, which is to be determined by comparing the fair market value of the entire land parcel before and immediately after the taking without concern for any benefit cause by the public condemnation project. *See Johnson v. Des Moines Metro. Wastewater Reclamation Auth.*, 814 N.W.2d 240, 246-47 (Iowa 2012). In making this determination, the "highest and best use of the property" is considered. *Dolezai v. City of Cedar Rapids*, 209 N.W.2d 84, 88 (Iowa 1973). Here, the highest and best use of the property is for residential development, and both expert witnesses determined the fair market value of the plaintiffs' property based on its use as residential development land. In contrast, the method used to determine the assessed value for agricultural land bears no relationship to fair market value. The tax-assessed value of the property is based entirely on a special statutory formula. *See* Iowa Code § 441.21(e) ("The actual value of agricultural property

shall be determined on the basis of productivity and net earning capacity of the property determined on the basis of its use for agricultural purposes capitalized at a rate of seven percent and applied uniformly among counties and among classes of property.").

The property's tax-assessed value, determined by the special statutory formula applicable to agricultural land, is not relevant to the determination of the property's fair market value as a residential development land. Accordingly, the trial court was within its discretion to exclude the evidence.

**IV. Jury Instructions.**

The City also argues the trial court erred in failing to give its requested instruction on speculative damages. The instruction reads:

> You should not take into consideration anything which is remote, imaginary, uncertain or speculative as bearing upon the question of the fair and reasonable market value of the property involved as a whole on the date of the condemnation. The only elements to be taken into consideration are those which are appreciable and substantial and which actually affected the market value of the real estate on the date of the taking.

We review claims that the trial court should have given a party's requested instruction for correction of errors at law. *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707-08 (Iowa 2016). A court is required "to give a requested jury instruction if it correctly states the applicable law and is not embodied in other instructions." *Id.* at 707 (quoting *Sonnek v. Warren*, 522 N.W.2d 45, 47 (Iowa 1994)). Reversal is only warranted if the refusal to give a requested instruction results in prejudice to the complaining party. *See Koenig v. Koenig*, 766 N.W.2d 635, 637 (Iowa 2009). Unless the error is of constitutional magnitude, prejudice is shown if it appears the rights of the complaining party have been injuriously affected or the

complaining party has suffered a miscarriage of justice. *State v. Marin*, 788 N.W.2d 833, 836 (Iowa 2010) *overruled on other grounds by Alcala*, 880 N.W.2d at 708.

The City argues that failure to instruct the jury as proposed allowed the jury "to speculate far afield from what is required in setting a condemnation award." We disagree. The jury was instructed that in determining the amount of damages, it was to find "the difference in the fair and reasonable market value of their property as a whole immediately before and the fair and reasonable market value of the remaining property immediately after the taking." The jury was further instructed that fair and just compensation was to be determined "based on the most valuable use for which the property was reasonably suited immediately before and after the condemnation." Another instruction outlines the factors the jury may consider in determining the fair and reasonable market value of the property, such as the property's location size, shape, accessibility, and use and capability, as well as improvements to the land, the quality of the buildings on the land, comparable sales of other properties, and the character of the neighborhood. Although the jury was not specifically instructed to disregard any speculative or uncertain evidence, it is implicit when reading the instructions in conjunction. *See Leaf v. Goodyear Tire & Rubber Co.*, 590 N.W.2d 525, 536 (Iowa 1999) (noting that "[j]ury instructions are to be read and considered as a whole" before finding the instructions given, when read together, adequately and accurately explained the law). Because the City was not prejudiced by the refusal to give the requested instruction, error, if any, does not require reversal.

**V. Jury Award.**

Finally, the City argues the district court erred in refusing its motion for new trial based on the jury's excessive damage award. *See Gorden v. Carey*, 603 N.W.2d 588, 590 (Iowa 1999) (holding a motion for new trial is the proper method for challenging the adequacy of damages).

A trial court may grant a motion for new trial if the jury awards excessive damages that are not supported by sufficient evidence. *See* Iowa R. Crim. P. 1.1004(4). The district court has considerable discretion in ruling upon a motion for new trial on this basis. *See Fisher v. Davis*, 601 N.W.2d 54, 57 (Iowa 1999). Ordinarily, we will not disturb the court's ruling on a motion for new trial based on inadequate or excessive damages unless an abuse of discretion is shown. *See id.*

The test for damages is whether a verdict fairly and reasonably compensates an injured party. *See id.* Because a condemnation award is peculiarly within the province of the trier of fact, we have consistently refused to interfere with an award unless it is shown to be "wholly unfair and unreasonable." *Sunrise Developing Co. v. Iowa Dep't of Transp.*, 511 N.W.2d 641, 645 (Iowa Ct. App. 1993). In determining whether a condemnation award is excessive, we view the evidence in the light most favorable to the condemnee. *See Twin-State Eng'g & Chem. Co. v. Iowa State Highway Comm'n*, 197 N.W.2d 575, 583 (Iowa 1972).

> [U]nless there is a radical situation with reference to the amount of damages allowed by the trier of fact in a condemnation case or unless the amount is such that it shocks the conscience of the court, the amount of the award is a question for the trier of fact and neither the trial court nor this court should interfere.

*Id.* (citation omitted).

In denying the City's motion for new trial based on excessive damages, the trial court held:

> Both parties offered expert testimony from appraisers as to the damage to the plaintiffs' property. Both appraisers were subjected to thorough cross examination regarding their opinions and the factual basis for the same. The jury choosing to accept the plaintiffs' valuation, rather than that offered by the defendant, does not support a finding that the jury lacked sufficient evidence upon which to base its award.

The court further found the plaintiffs' expert witness was qualified and was permitted to offer his opinions concerning valuation and the highest and best use of the plaintiffs' land. On this basis, the court found substantial evidence was presented to support the jury's award of $290,000.

The district court was within its discretion in denying the City's motion for new trial based on an allegedly excessive damage award. Both parties' experts were qualified to give an opinion as to the property's value before and after the taking based on its best use. The jury chose to accept the evidence and opinion presented by the plaintiffs' expert over the evidence and opinion presented by the City's expert. It was within its right to do so. *See Seastrom v. Farm Bureau Life Ins. Co.*, 601 N.W.2d 339, 346 (Iowa 1999) ("When evidence is in conflict, 'we entrust the weighing of testimony and decisions about the credibility of witnesses to the jury.'" (citation omitted)); *Kautman v. Mar-Mac Cmty. Sch. Dist.*, 255 N.W.2d 146, 148 (Iowa 1977) ("[T]he jury was at liberty to accept or

reject any such opinion evidence in whole or part.").  The jury's damage award is not wholly unfair and unreasonable, and we therefore affirm.

**AFFIRMED.**